Hillsborough-northern judicial district
No. 2001-559

THE STATE OF NEW HAMPSHIRE

v.

JOHN DENONCOURT

Argued: January 14, 2003
Opinion Issued: April 11, 2003

*Philip T. McLaughlin*, attorney general (*Robert S. Carey*, attorney, on the brief, and *N. William Delker*, assistant attorney general, orally), for the State.

*Richard E. Samdperil*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

DUGGAN, J. After a bench trial, the defendant, John Denoncourt, was convicted of driving after certification as a habitual offender, disobeying a police officer, and resisting arrest. *See* RSA 262:23 (Supp. 2002); RSA 265:4 (Supp. 2002); RSA 642:2 (Supp. 2002). The sole issue on appeal is whether the Superior Court (*Brennan*, J.) erred in denying the defendant's motion to suppress. We reverse and remand.

Officer Guyse of the Manchester Police Department testified at the suppression hearing that while on patrol on July 23, 2000, he saw a car with expired registration tags traveling west on Hanover Street in Manchester. As Officer Guyse followed the car, the defendant pulled off to the side of the street. Officer Guyse pulled up behind the car, activated his emergency lights and approached the vehicle on foot. Officer Guyse told the defendant why he had been stopped and asked him to produce his

license and registration. The defendant stated he did not have any identification with him, but identified himself as "Doug Roberts."

The defendant told Officer Guyse that he was visiting a friend, James, who lived in a nearby house. At that point, Officer Guyse was joined by Officer Gallant as back-up. Officer Guyse then left the defendant with Officer Gallant and went to the house to inquire. A man in the yard told him that no one named "James" lived there. Officer Guyse returned and asked the defendant to get out of the car. The defendant stepped out and walked over to Officer Gallant. Officer Guyse "stuck [his] head into the opened window of the car, and while kind of looking inside the interior of the car, [the defendant] took off on foot." The officers gave chase but were unsuccessful in apprehending the defendant. They returned to the car and radioed for a tow truck.

After learning that the car was not registered to "Doug Roberts," Officer Guyse unsuccessfully attempted to contact the car's owner. He then opened the car door and searched the interior. Inside, he saw a wallet between the console and the seat. Officer Guyse opened the wallet and found a non-driver's identification card identifying the defendant as John Denoncourt.

Following indictment, the defendant filed a motion to suppress, contending that the search of the wallet violated Part I, Article 19 of the New Hampshire Constitution and the Fourth and Fourteenth Amendments of the United States Constitution.

The court, citing *State v. Psomiades*, 139 N.H. 480 (1995), denied the defendant's motion to suppress because the court was "convinced from the testimony that the wallet was reasonably seized for safekeeping." The court concluded that "Officer Guyse was performing a search of the interior for weapons and contraband, and it was reasonable to secure the wallet rather than to leave it unsecured in the vehicle." The defendant was subsequently convicted of all charges. This appeal followed.

On appeal, the defendant raises one issue: whether the warrantless search of his wallet was justified under the community caretaking exception. Our review of the superior court's order on a motion to suppress is *de novo*, except as to any controlling facts determined by the superior court. *State v. Boyle*, 148 N.H. 306, 307 (2002). We first address the defendant's argument under the New Hampshire Constitution, citing federal cases only to aid in the analysis. *See State v. Ball*, 124 N.H. 226, 232 (1983); *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983). We need not engage in a separate federal analysis because our constitution is at least as protective as the Federal Constitution in this area. *Boyle*, 148 N.H. at 307; *United States v. Rodriguez-Morales*, 929 F.2d 780, 787 (1st Cir. 1991), *cert.*

*denied,* 502 U.S. 1030 (1992) (citing the Fourth Amendment search and seizure standard).

Under Part 1, Article 19 of the New Hampshire Constitution, warrantless searches are *per se* unreasonable unless they fall within the narrow confines of a judicially crafted exception. *Boyle,* 148 N.H. at 306. The State has the burden to show that the search was valid under one of the exceptions to the warrant requirement. *State v. Brunelle,* 145 N.H. 656, 659 (2000).

Both this court and the United States Supreme Court have recognized that every day, police are involved in "community caretaking functions — helping stranded motorists, returning lost children to anxious parents, assisting and protecting citizens in need — totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *People v. Ray,* 981 P.2d 928, 931 (Cal. 1999), *cert. denied,* 528 U.S. 1187 (2000) (quotations omitted). This community caretaking function has been identified as a limited exception to the warrant requirement. *Psomiades,* 139 N.H. at 481; *Cady v. Dombrowski,* 413 U.S. 433, 441 (1973). Evidence found in the course of caretaking activities is usually admissible at trial. *Rodriguez-Morales,* 929 F.2d at 785.

In *Cady,* the United States Supreme Court upheld the search of the trunk of the defendant's car after an accident left him comatose. *Cady,* 413 U.S. at 446-48. Because the defendant was an off-duty police officer, the police reasonably believed that his service revolver might be in the car and could present a danger to the public. *Id.* at 446-47. The police were thus justified in looking for and seizing the revolver under the community caretaking exception. The Supreme Court said that seizure of the revolver was permissible because the intrusion was "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* at 441.

We followed *Cady* in *Psomiades,* where the defendant, who was alone in her car, had been arrested at 3:00 a.m. for driving while intoxicated. *Psomiades,* 139 N.H. at 481. After placing the defendant in the rear of the cruiser, the police officer returned to the defendant's car "to secure it." *Id.* Before locking the car and turning on the hazard lights, the officer removed the defendant's purse from the car. *Id.* We held that the seizure was no more than a routine and good faith attempt, in the exercise of reasonable caution, to safeguard the defendant's own property. *Id.*

Here, as in *Psomiades,* the seizure of the wallet by the police was justified by the community caretaking exception. The defendant was the only person in the car and left it unoccupied on the side of the street when

he fled. Before searching the car, the police conducted a registration check in an attempt to find the owner and when they were unable to contact the owner, they called a tow truck for removal. At that point, the police were justified in searching the car to safeguard any property left in the car.

The State argues that, in addition to the seizure, the search of the wallet also falls within the community caretaking exception to safeguard the contents of the wallet from theft after the defendant left the property unattended. The defendant contends that the State confuses the inventory search exception with the community caretaking exception and that, on the facts of this case, the inventory exception is not applicable.

Again, *Psomiades* is instructive. There, after the police seized the defendant's purse, they took it to the station and conducted an inventory search of its contents. On appeal, the defendant did not challenge the inventory search of the purse. *Id.* Thus, *Psomiades* did not hold that the community caretaking exception justified opening and searching the purse.

It is generally the inventory exception that allows the search of closed containers removed from a vehicle. The inventory exception serves to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger. *Colorado v. Bertine*, 479 U.S. 367, 372 (1987); *see, e.g., State v. Green*, 133 N.H. 249, 253 (1990); *State v. Toto*, 123 N.H. 619, 623 (1983).

■ In order to be valid as an inventory search, the search must be conducted pursuant to a neutral police policy. *See State v. Finn*, 146 N.H. 59, 62 (2001). Both this court and the United States Supreme Court have held that if the police have no policy with respect to the opening of closed containers found in a vehicle during an inventory search, evidence found during such a search will be suppressed. *Finn*, 146 N.H. at 61; *Florida v. Wells*, 495 U.S. 1, 4-5 (1990). Here, the State does not argue that the inventory search exception applies because the police officer testified that he was not aware of any inventory policy that the Manchester Police Department had at the time of the search.

■ The State invites us to expand the holding in *Psomiades* and extend the community caretaking exception to the search of the defendant's wallet. We decline the invitation. The expansion of the community caretaking exception on these facts would erode the inventory search exception. The inventory exception, by requiring a police policy for searches of cars and containers in cars, gives police clear guidance and limits their discretion. To generally allow the community caretaking exception to substitute for the established, easily understood and followed,

inventory rules would create unnecessary ambiguity in search and seizure law and diminish the protections provided by those rules.

We therefore hold that the superior court erred in denying the defendant's motion to suppress.

*Reversed and remanded.*

BROCK, C.J., and NADEAU and DALIANIS, JJ., concurred.