Rockingham
No. 2010-059

THE STATE OF NEW HAMPSHIRE

v.

CHRISTOPHER NEWCOMB

Argued: February 10, 2011
Opinion Issued: April 12, 2011

*Michael A. Delaney*, attorney general (*Jacqueline J. Rompre*, assistant attorney general, on the brief and orally), for the State.

*Lothstein Law Office, PLLC*, of Concord, (*Theodore Lothstein* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, Christopher Newcomb, appeals a decision of the Superior Court (*Lewis*, J.) denying his motion to suppress evidence obtained as a result of his arrest for criminal trespass and the subsequent inventory search of his rented U-Haul truck. We reverse and remand.

The record supports the following facts. On February 25, 2008, the Kensington Police Department received a report that two men with a U-Haul truck were parked at 9 Old Amesbury Road. A neighbor of the property owners told police that no one was supposed to be on the property because the owners were out of town. Captain Jeremiah O'Sullivan arrived at the home and observed the truck in the driveway, backed up to a closed garage door. The U-Haul was a "box-like truck, with an interior section for passengers and a separate section in the back for item storage and transporting."

As O'Sullivan approached, he heard the defendant yell something and then get into a car parked on the property. Seconds later, O'Sullivan saw a man's head pop out from behind the U-Haul and quickly dart back behind it. That man, Timothy Dzenowagis, then came out from behind the truck and approached O'Sullivan. Dzenowagis told O'Sullivan that he was moving and planned to leave the truck on the property while waiting for his aunt, who owned the home. When O'Sullivan asked for identification, Dzenowagis provided a New Hampshire identification card. O'Sullivan testified that

Dzenowagis's voice was trembling and his hands were shaking. At this point, O'Sullivan ordered Dzenowagis to put his hands on the cruiser and also ordered the defendant to get out of the car and put his hands on the cruiser. The defendant appeared extremely nervous and told O'Sullivan that he had driven the U-Haul to the property and that the car belonged to a friend from Newmarket. However, when O'Sullivan asked who drove the car to the property, neither man responded.

Two neighbors then arrived with a cell phone and told O'Sullivan that the property owner, Melissa Dzenowagis, wanted to speak to O'Sullivan. O'Sullivan told the property owner that her nephew and another man were on the property. The property owner told him that she wanted them arrested and any vehicles removed from the property. The property owner also stated that she had told Dzenowagis that he was not allowed on the property and asked O'Sullivan to check the house because Dzenowagis was likely stealing something.

At this point, the defendant and Dzenowagis provided O'Sullivan with a U-Haul rental agreement, which showed that the U-Haul had been rented the previous night in the defendant's name. The defendant and Dzenowagis both told O'Sullivan that nothing was inside the U-Haul. When O'Sullivan stated that he thought the truck was loaded with furniture, neither the defendant nor Dzenowagis responded. After the defendant refused consent to search the truck, O'Sullivan arrested the defendant and Dzenowagis for criminal trespass and impounded the U-Haul and car.

O'Sullivan then conducted an inventory search of both vehicles because the men gave conflicting statements regarding what was inside the truck, the truck was on someone else's property, and he needed to determine the truck's contents prior to bringing it to the police department in order to protect the safety of the officers and the public. He testified that he conducted inventory searches of both vehicles pursuant to the department's inventory search policy. He unlocked the storage space of the U-Haul, which was padlocked, with a key he found attached to the defendant's belt. Inside the storage area of the truck, O'Sullivan observed building materials and copper tubes, pipes and wire. He immediately ended the search and applied for a search warrant. The affidavit for the search warrant included a description of the fruits of the inventory search.

Prior to trial, the defendant filed two motions to suppress, both of which challenged the admissibility of evidence found in the U-Haul. In the first motion, he argued that he was arrested without probable cause and that the search of the U-Haul was not a proper inventory search. In the second motion, he argued that O'Sullivan's supporting affidavit did not establish probable cause to obtain a search warrant. The trial court conducted a consolidated hearing on the defendant's motions and similar motions filed

by Dzenowagis and denied them in a written order. The defendant subsequently submitted to a stipulated facts trial and was found guilty by the trial court.

I

On appeal, the defendant first argues that the police lacked probable cause to arrest him for criminal trespass. He contends that while O'Sullivan had reasonable suspicion to temporarily detain him for investigation, the result of that investigation did not amount to probable cause to arrest him. Specifically, he asserts that at the time of his arrest there was no probable cause that he "knew he was not allowed to be on the premises."

An officer has probable cause to arrest when he has "sufficient, trustworthy information to warrant a reasonable person to believe that the arrestee has committed a crime." *State v. Vandebogart*, 139 N.H. 145, 163 (1994). In determining whether the police had probable cause, we review "reasonable probabilities and not the amount of evidence required to sustain a conviction or to make out a *prima facie* case." *State v. Jaroma*, 137 N.H. 562, 567 (1993) (quotation omitted). We are not bound by mathematical calculations in making this determination, but instead "must approach the issue with a concern for the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Vandebogart*, 139 N.H. at 163 (quotation omitted).

RSA 635:2, I (2007) provides that "[a] person is guilty of criminal trespass if, knowing that he is not licensed or privileged to do so, he enters or remains in any place." Contrary to the defendant's argument, at the moment O'Sullivan placed the defendant under arrest, O'Sullivan had ample evidence suggesting that the defendant knew he was not allowed on the premises. When O'Sullivan approached the property, the defendant immediately yelled something and got into a car, which O'Sullivan found to be suspicious. He also appeared "extremely nervous" throughout his interaction with O'Sullivan, *see State v. Rodrigue*, 127 N.H. 496, 498 (1985) (defendant's "nervous manner" was a factor supporting probable cause), and admitted that he came to the property with Dzenowagis. Furthermore, O'Sullivan received a phone call from the property owner, who told him that Dzenowagis knew he was not allowed on the property and that she wanted both men arrested. Additionally, O'Sullivan knew that the defendant rented the U-Haul and drove it to the property.

We again emphasize that probable cause is a commonsense rather than technical concept and "deals with the reasonable probabilities upon which officers must act quickly for the protection of society rather than with the proof beyond reasonable doubt which the State must have to

proceed to trial and conviction." *State v. Hutton*, 108 N.H. 279, 287 (1967) (quotation omitted). Accordingly, these facts, taken as a whole, provided O'Sullivan with probable cause to arrest the defendant for criminal trespass.

## II

The defendant next contends that the inventory search of his rented U-Haul truck violated Part I, Article 19 of the New Hampshire Constitution and the Fourth Amendment of the United States Constitution because the Kensington Police inventory search policy did not authorize the search of a padlocked U-Haul truck. He disputes the trial court's determination that the locked storage area of a U-Haul truck fits within the meaning of a "trunk" as used in the department's inventory search policy. He also asserts that the search violated the policy because it was not conducted for a non-investigative purpose.

When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's findings unless they lack support in the record or are clearly erroneous. *State v. Craveiro*, 155 N.H. 423, 426 (2007). However, we review the trial court's legal conclusions *de novo*. *Id.* We decide this case based upon our interpretation of the New Hampshire Constitution, citing federal cases only to aid in the analysis. *See State v. Pinkham*, 141 N.H. 188, 189 (1996). Because we determine that the search violated the defendant's rights under the State Constitution, we need not reach the federal issue. *See State v. Ball*, 124 N.H. 226, 237 (1983).

■ Part I, Article 19 of the New Hampshire Constitution provides that every citizen has "a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." Warrantless searches are *per se* unreasonable unless they fall within the narrow confines of a judicially crafted exception. *Craveiro*, 155 N.H. at 426. The State has the burden of proving that a search falls within one of the exceptions. *State v. Denoncourt*, 149 N.H. 308, 310 (2003).

■ Inventory searches fall within a "well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). Such searches are permissible because they serve important noninvestigative government interests, including protecting an owner's property while in the custody of police, insuring against claims of lost, stolen, or vandalized property, and guarding the police from danger. *Denoncourt*, 149 N.H. at 311. We have previously recognized that inventory searches are permissible so long as they are conducted pursuant to a neutral police policy. *Id.*; *see also Bertine*, 479 U.S. at 374 (police conducting an inventory search must act pursuant to reasonable police regulations).

Such a policy reduces police discretion to search at will and turn an inventory procedure into an investigative search. *Com. v. Garcia,* 569 N.E.2d 385, 389 (Mass. 1991).

The relevant portion of the Kensington police inventory search policy provides:

> Whenever a vehicle is subject to police impoundment (physical custody by this agency) a full inventory search will be conducted and all items located throughout the vehicle will be listed on the motor vehicle inventory form in the police report.

> An inventory search must be non-investigative, be designed to protect the interest of the owner, the police and society, and shall be limited to unlocked areas and/or containers, although a search may be conducted of the glove compartment and the trunk. If an officer has probable cause prior to the inventory search, then a search warrant shall be obtained. If probable cause develops during the inventory search, the search shall cease and the officer shall apply for a search warrant.

In determining that the inventory search was permissible, the trial court acknowledged that the policy did not "expressly discuss an inventory search of the locked back of a U-Haul vehicle," but concluded that such a storage area "may fairly be considered as fitting within the concept or meaning of a 'trunk' as that term is used in the policy." The defendant contends that the trial court misinterpreted the policy, which demonstrates that the policy gives too little guidance and too much discretion to police officers in the field. *See Denoncourt,* 149 N.H. at 311-12. The State maintains that the search was consistent with the objectives behind the inventory search policy and did not exceed the scope of the policy because it provided for the search of a locked trunk.

■ While the police may be afforded some discretion in conducting inventory searches when that discretion is exercised in light of standardized criteria, *see Bertine,* 479 U.S. at 375-76, an officer must conduct a search according to a neutral policy, which gives police clear guidance. *Denoncourt,* 149 N.H. at 311. In this case, Kensington has adopted a policy that provides specific guidelines for searching locked "areas" and "containers." The department's inventory search policy states that inventory searches "*shall be limited* to unlocked areas and/or containers, *although* a search may be conducted of the glove compartment and trunk." (Emphases added.) Thus, the policy generally prohibits the search of locked areas, but allows for the search of two specific locked areas — trunks and glove compartments. Kensington could have adopted more general language

directing the police to inventory all compartments or areas of a vehicle so long as the policy incorporates standard procedures. However, the department specifically adopted a policy that limits an officer's search to only two locked areas and prohibits the search of any locked area or container that is not a trunk or glove compartment.

█ The common meaning of a trunk is: "the luggage compartment of an automobile." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2456 (unabridged ed. 2002). While we recognize that a trunk serves some of the same purposes as the back of a U-Haul truck, the Kensington policy specifically provided only for a search of a locked trunk, which the back compartment of a U-Haul truck is not. In particular, a U-Haul truck's storage space is much larger than the average trunk and is intended to carry significantly more cargo. Indeed, in this case, the defendant and Dzenowagis used the truck to transport building materials and copper pipes. Additionally, unlike a trunk, the storage space was secured with a padlock and could be accessed only by opening the padlock. Accordingly, we cannot conclude that the back of a U-Haul truck fits within the meaning of a trunk.

█ The State also argues that the search was tailored to the objectives of the policy and did not exceed the scope of the policy. O'Sullivan testified that he conducted the search according to the department's inventory search policy, which he construed to allow him to search the entire vehicle. Nonetheless, the plain language of the policy is contrary to O'Sullivan's understanding of the proper scope of an inventory search. We again emphasize that Kensington could have adopted a broader search policy, but chose to narrowly limit searches of locked areas and containers. *See Florida v. Wells*, 495 U.S. 1, 4 (1990) (explaining that an inventory search policy may leave some room for police discretion but may not provide "so much latitude that inventory searches are turned into a purposeful and general means of discovering evidence of crime" (quotation omitted)). Accordingly, the search was not conducted according to the standardized procedures of the Kensington Police Department and was not a proper inventory search. *See Bertine*, 479 U.S. at 372; *see also United States v. Lozano*, 171 F.3d 1129, 1131 (7th Cir.) ("when an inventory search is carried out in accordance with *standard procedures* in the local police department, it tends to ensure that the intrusion is limited"), *cert. denied*, 528 U.S. 946 (1999).

## III

Because the warrantless search of the defendant's U-Haul violated Part I, Article 19 of our State Constitution, the information obtained from that

search should be excised from the affidavit in support of the warrant and the remainder of the affidavit examined to determine whether it establishes probable cause. *See State v. Plch*, 149 N.H. 608, 620, *cert. denied*, 540 U.S. 1009 (2003). The defendant urges us to remand to the trial court to determine whether the affidavit, absent the illegally obtained evidence, still establishes probable cause because the trial court has not previously considered the issue. The State contends that we should excise the tainted information and then examine the remaining information to determine whether it establishes probable cause.

It is clear that any evidence obtained from the back of the U-Haul truck must be excised and cannot be used to establish probable cause for the search warrant. While we frequently conduct a probable cause analysis without the issue first being decided in the trial court, *see, e.g., State v. Orde*, 161 N.H. 260 (2010), we believe that the trial court is best positioned to make the determination in this case. Even without the illegally obtained evidence, the affidavit contains other evidence of criminal activity, including a post-*Miranda* statement from Dzenowagis and information that Dzenowagis had recently transported significant quantities of scrap metal in a U-Haul truck and then sold the metal in Massachusetts. Neither party addressed whether Dzenowagis's statement was a fruit of the unlawful search or whether the defendant has standing to challenge the use of that statement in the search warrant affidavit. We thus remand to the trial court to make these and other determinations, including whether the remaining information in the search warrant affidavit establishes probable cause.

*Reversed and remanded.*

DALIANIS, C.J., and HICKS and CONBOY, JJ., concurred; LYNN, J., concurred in part and dissented in part.

LYNN, J., concurring in part and dissenting in part. I agree with the majority that Captain O'Sullivan had probable cause to arrest the defendant. I also agree that, if the inventory search of the U-Haul truck was invalid, it makes sense in the circumstances of this case to remand to the trial court to determine whether there was probable cause for the search warrant in the absence of the information gleaned from the inventory search and to address the standing and "fruits" issues identified by the majority. I disagree, however, with the majority's conclusion that the inventory search violated the police department policy concerning such searches.

The Kensington Police Department's inventory search policy permits the search of the trunk of a vehicle even if it is locked. As the majority notes, "trunk" means "the luggage compartment of an *automobile.*" WEBSTER'S

THIRD NEW INTERNATIONAL DICTIONARY 2456 (unabridged ed. 2002) (emphasis added). But the policy applies to all vehicles, not just to automobiles. A "vehicle" is "a carrier of goods or passengers." *Id.* at 2538; *see also* RSA 259:122 (2004) (with certain exceptions not relevant here, statute defines "vehicle" as "every mechanical device in, upon or by which any person or property is or may be transported or drawn upon a way").

That being the case, I agree with the reasoning of the superior court that, because the cargo area or "box" of the U-Haul truck is the functional equivalent of the trunk of an automobile, it was subject to search under the policy even though it was locked. Indeed, given that the three interests which underlie the inventory search doctrine, *i.e.*, protection of property, avoidance of liability claims against the police, and protection of the police and the public from danger, are heightened — not lessened — in the case of vehicles, such as the U-Haul truck, which contain larger cargo areas than the trunk of a typical automobile, it is implausible that the policy was intended to restrict the search of such areas more narrowly than the search of an automobile trunk. *Cf. State v. Rollins-Ercolino*, 149 N.H. 336, 341 (2003) (court will not interpret statute to require an illogical result); *Appeal of Geekie*, 157 N.H. 195, 202 (2008) (court "will not interpret statutory language in a literal manner when such a reading would lead to an absurd result" (quotation omitted)); *Appeal of Town of Pittsfield*, 160 N.H. 604, 606 (2010) (principles of statutory construction govern interpretation of administrative regulations). It is true that, unlike many automobiles where the trunk is accessible or can be unlocked from inside the vehicle, the U-Haul could only be unlocked from the outside. But I fail to see how this distinction has any bearing on the issue at hand because, under the policy, a locked trunk can be searched even if it can be unlocked only from outside the vehicle. In my view, the policy uses the term "trunk" in a functional or generic sense, to refer to the cargo storage area of a vehicle. Since the box of the U-Haul truck fits this description, it may be searched even if locked.

Because I would find that the Kensington police policy allowed Captain O'Sullivan to inventory the box of the U-Haul truck, I must also address the defendant's argument that Captain O'Sullivan violated the policy because he acted with the purpose to conduct a search for evidence. The short answer to this argument is that, although the defendant raises it in his appellate brief, the record contains no indication that he ever raised it before the trial court. For this reason, I need not consider it further. *State v. Winward*, 161 N.H. 533, 542 (2011) (appellant must demonstrate that issues raised on appeal were presented to trial court).

For the reasons stated above, I respectfully dissent from that portion of the majority opinion that holds the inventory search invalid. I, therefore, would affirm the defendant's conviction.