Rockingham
No. 2013-069

THE STATE OF NEW HAMPSHIRE

v.

DAVID LANTAGNE

Argued: November 21, 2013
Opinion Issued: December 24, 2013

*Joseph A. Foster*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*John A. Macoul*, of Salem, by brief and orally, for the defendant.

DALIANIS, C.J. The defendant, David Lantagne, appeals a decision of the Superior Court (*Wageling*, J.) denying his motion to suppress evidence that led to his conviction on stipulated facts of three counts of possessing child sexual abuse images. *See* RSA 649-A:3 (Supp. 2013). We reverse and remand.

The following facts either are drawn from the trial court's order denying the defendant's motion to suppress or otherwise appear in the record. On July 6, 2011, a female patron at Canobie Lake Park informed a park security officer that she had just left one of the park's water attractions because she felt uncomfortable seeing an adult male use his cellular telephone to take photographs of young children. The security officer went to the attraction and observed the defendant repeatedly moving his cell phone to the side of his leg, aiming it toward other patrons (including juveniles), and then bringing it to a position where he could view it. Most, if not all, of the patrons at the attraction wore bathing suits.

Park security called a Salem police officer to the scene, asked the defendant if he would agree to speak with the officer, and, when he agreed, brought the defendant to the officer. As the park security officer accompanied the defendant to the police officer, the security officer saw the defendant "frantically" tapping the keys of his cell phone. Fearing that the defendant was deleting photographs from his cell phone, the security officer asked the defendant if he would agree to hand him the phone. When the defendant gave his phone to the security officer, the security officer observed the "backsides" of young girls in bathing suits on the phone's screen.

Park security handed the phone to the police officer, who then asked the defendant for his identification. Meanwhile, the security officer advised the defendant of his observations, and the defendant admitted that he had been using his phone to take photographs of girls eleven or twelve years old. Upon further questioning by the security officer, the defendant admitted

that he is attracted to young girls, that he has a problem, and that he needs professional help. The defendant further admitted that he had previously taken similar photographs at the park and at a local mall. He also admitted that he downloads photographs from his cell phone to his home computer. At that point, the police officer arrested the defendant for disorderly conduct. See RSA 644:2 (2007).

The defendant was transported to the Salem Police Department, where detectives interviewed him. After several hours, the defendant admitted that he possessed child pornography on a computer and related equipment stored in his bedroom. The detectives then obtained search warrants for the defendant's bedroom and computer equipment, seeking evidence of child pornography and child sexual abuse images. Subsequent analysis of the computer equipment seized from the defendant's home pursuant to those warrants uncovered the images that are the subject of the defendant's conviction at issue in this appeal. According to the defendant, and not disputed by the State, the original disorderly conduct charge was never pursued.

Before trial, the defendant moved to suppress the evidence obtained following his arrest for disorderly conduct, arguing, among other things, that the arrest was unconstitutional because it lacked probable cause sufficient to satisfy the State and Federal Constitutions. The trial court disagreed, finding that there was probable cause for the defendant's arrest because the police "had information that Defendant had taken pictures of young girls" and had stored those pictures on his cell phone and home computer. The trial court reasoned that because "there had been complaints about Defendant by other Park patrons, it was likely that if [he] was not arrested, further damage could occur." The court concluded that "these facts, taken as a whole, provided [the police] with probable cause to arrest Defendant." However, the trial court did not identify the crime for which the police had probable cause to arrest.

On appeal, the defendant argues, among other things, that the trial court erred when it found that the police had probable cause to arrest him for disorderly conduct. He contends that his arrest without probable cause violated the State and Federal Constitutions. See N.H. CONST. pt. I, art. 19; U.S. CONST. amend. IV. We first address the defendant's claim under the State Constitution and rely upon federal law only to aid in our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

In reviewing a trial court decision on a motion to suppress, we accept the trial court's findings unless they lack support in the record or are clearly erroneous, but review its legal conclusions de novo. State v. Newcomb, 161 N.H. 666, 670 (2011). On a motion to suppress, the State bears the burden of establishing the legality of an arrest. See SUPER. CT. R. 94 (State bears

burden of proof at suppression hearings); *cf. State v. Martin*, 145 N.H. 362, 364 (2000) (State bears burden of establishing legality of search at suppression hearing); *State v. Maya*, 126 N.H. 590, 595 (1985) (State had burden to justify defendant's detention as a legitimate investigatory stop).

■ An officer has probable cause to arrest when he has "sufficient, trustworthy information to warrant a reasonable person to believe that the arrestee has committed a crime." *Newcomb*, 161 N.H. at 669 (quotation omitted). "In determining whether the police had probable cause, we review reasonable probabilities and not the amount of evidence required to sustain a conviction or to make out a *prima facie* case." *Id.* (quotation omitted). "We are not bound by mathematical calculations in making this determination, but instead must approach the issue with a concern for the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* (quotation omitted).

The State argues that we review a trial court's determination of probable cause deferentially, quoting *State v. Vandebogart*, 139 N.H. 145, 164 (1994), in which we stated that we would not "overturn a trial court's determination of probable cause unless, when the evidence is viewed in the light most favorable to the State, the decision is contrary to the manifest weight of the evidence." Because the defendant does not argue for a different standard, we assume, without deciding, that the *Vandebogart* standard applies.

The State argues that the officer had probable cause to arrest the defendant for violating RSA 644:2, II(a), which provides that a person is guilty of disorderly conduct if he or she "[e]ngages in fighting or in violent, tumultuous or threatening behavior in a public place." Specifically, the State asserts that there was probable cause to believe that the defendant engaged in "threatening" behavior by surreptitiously photographing the backsides of children, causing at least one patron discomfort.

The interpretation of a statute is a question of law, which we review *de novo*. *State v. Mercier*, 165 N.H. 83, 85 (2013). In matters of statutory interpretation, we are the final arbiters of the intent of the legislature as expressed in the words of the statute considered as a whole. *Id.* When examining the language of the statute, we construe that language according to its plain and ordinary meaning. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We construe the Criminal Code "according to the fair import of [its] terms and to promote justice." RSA 625:3 (2007).

■■ The plain meaning of "threaten" is "to utter threats against: promise punishment, reprisal, or other distress . . . to promise as a threat: hold out by way of menace or warning . . . to give signs of the approach of

(something evil or unpleasant): indicate as impending." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2382 (unabridged ed. 2002); *see* RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1976 (2d ed. 2001) ("threatening" means "tending or intended to menace[;] . . . causing alarm, as by being imminent; ominous; sinister"). The synonym for threaten is "menace," which means to "to make a show of intention to harm: make a threatening gesture, statement, or act against." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra* at 1409, 2382. We note that each of the remaining terms in RSA 644:2, II(a) — "fighting," or "violent" or "tumultuous" behavior in public — involves conduct with immediate consequences to other persons present. In context, therefore, we construe "threatening behavior in a public place" to encompass conduct posing a threat of imminent harm to other persons present, and not conduct that merely causes discomfort. RSA 644:2, II(a); *see Appeal of Thermo-Fisher Scientific*, 160 N.H. 670, 672 (2010) ("We interpret a statute to lead to a reasonable result and review a particular provision, not in isolation, but together with all associated sections.").

█ Photographing properly-attired children in an open and public portion of Canobie Lake Park, regardless of whether the photographs were of the children's backsides, were taken surreptitiously, or would be uploaded to a computer, would not have warranted a reasonable belief that the photographer posed a threat of imminent harm to any patrons, including the children. *See Newcomb*, 161 N.H. at 669. The State articulates no other crime that a reasonable person would have believed occurred, and we are aware of none. Accordingly, viewing the evidence in the light most favorable to the State, we conclude that the officer lacked probable cause to arrest the defendant. The trial court's finding of probable cause is contrary to the manifest weight of the evidence. *See Vandebogart*, 139 N.H. at 164.

█ If an arrest is unlawful, the fruit of the poisonous tree doctrine and the exclusionary rule require the suppression of any evidence or statements "derivatively obtained through a violation of Part I, Article 19 of the New Hampshire Constitution." *State v. Orde*, 161 N.H. 260, 268 (2010); *see State v. De La Cruz*, 158 N.H. 564, 566 (2009). "If the evidence in question has been obtained only through exploitation of an antecedent illegality, it must be suppressed." *Orde*, 161 N.H. at 268. Although there are exceptions to the exclusionary rule, the State does not argue that any of them apply. *See De La Cruz*, 158 N.H. at 566-68 (describing exceptions to exclusionary rule, including exception under which State proves that the taint of the primary illegality is purged).

Here, because the State does not argue otherwise, all of the evidence acquired from the defendant following his unlawful arrest was obtained only as a result of the unlawful arrest, and, therefore, was fruit of the poisonous tree. *See Orde*, 161 N.H. at 268. Under these circumstances, the trial court erred by not suppressing the statements and other evidence acquired from the defendant while he was in custody following his arrest. *See id.* The trial court likewise erred by not suppressing the evidence seized pursuant to the search warrants. *See id.* at 268-69.

Therefore, we reverse the denial of the defendant's motion to suppress. Because we conclude that the defendant prevails under the State Constitution, we need not undertake a separate federal analysis. *See Mercier*, 165 N.H. at 87. In light of our holding that there was no probable cause for the defendant's arrest and that all of the evidence obtained as a result of the arrest must be excluded as fruit of the poisonous tree, we do not reach the defendant's remaining arguments. We reverse the defendant's conviction and remand.

*Reversed and remanded.*

HICKS, CONBOY, LYNN and BASSETT, JJ., concurred.