# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0289, <u>State of New Hampshire v. Peter A. Dauphin</u>, the court on December 13, 2017, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The State appeals an order of the Superior Court (<u>Fauver</u>, J.) granting the motion of the defendant, Peter A. Dauphin, to suppress all evidence obtained as a result of a warrantless inventory search of his vehicle. We reverse and remand.

The following facts are taken from the trial court's order granting the defendant's motion to suppress, or are otherwise undisputed. On April 25, 2015, Officer Carlson and Field Training Officer Black of the Laconia Police Department observed a Pontiac sedan speeding through an intersection. The officers followed the vehicle, which continued to travel above the speed limit, and initiated a traffic stop. Carlson approached the vehicle and made contact with the defendant, who was driving. After running an inquiry on the vehicle's license plate and speaking with the defendant, Carlson and Black determined that the vehicle was not properly registered. On that basis, the officers decided that the car would have to be towed. As a result, Black contacted dispatch to request a tow truck.

Carlson informed the defendant that he was being cited for failure to display plates and violating the speed limit. He also told the defendant that he would have to seize the vehicle's license plates and that a tow truck had been summoned. The defendant asked that the vehicle be towed to his residence, which was approximately 200 feet from the site of the traffic stop. Neither officer objected to the vehicle being towed to the defendant's residence. The defendant was directed to speak with the tow truck driver to make the arrangements. At about this same time, Carlson informed the defendant that he would be conducting an inventory search of the vehicle pursuant to the Laconia Police Department inventory of towed vehicles policy (LPD inventory search policy).

Carlson began the inventory search just after the tow truck arrived. Carlson testified at the suppression hearing that he thought the defendant spoke with the tow truck driver, but that his focus was on the inventory of the vehicle so he could not offer any specifics regarding their conversation.

Carlson began his inventory search at the front of the vehicle on the passenger side and then proceeded to the rear seat, where he pulled down the

center armrest to look into the trunk. Carlson then moved to the driver's side of the vehicle, where, he discovered that the front driver's side door was locked. He returned to the passenger's side door, and discovered that it, too, was locked, so he reached into the open window and unlocked the vehicle from the inside. This triggered the vehicle's alarm. Carlson called to the defendant, who was walking toward a nearby intersection, and asked him to return to the vehicle and deactivate the alarm. The defendant did so and also unlocked the door. Carlson informed the defendant that it was customary to provide the tow truck driver with a key to the vehicle in order to aid in loading the vehicle onto the tow truck.

As Carlson resumed his inventory, the defendant approached the vehicle. Carlson asked the defendant to step back, citing officer safety. The defendant responded that Carlson did not have to continue searching the vehicle. Carlson told the defendant that he was not conducting a "search," but, rather, an "inventory" of the contents of the vehicle, noting that he had to do so before the vehicle was towed. (Quotations omitted.) While conducting the inventory, Carlson found a bag under the driver's seat with a clear plastic sandwich style bag sticking out of it, which he believed contained crystal methamphetamine. The defendant was arrested and transported to the Laconia Police Department. Following his arrest, the officers determined that the defendant's vehicle would be seized for further investigation and they instructed the tow truck driver to tow the vehicle to the Laconia Police Department impound lot.

The defendant was thereafter questioned at the police department and made statements regarding additional contraband located at his residence. Based upon these statements, a search warrant was obtained to search the defendant's residence, where law enforcement officers found additional contraband. The defendant was charged with two counts of possession of a controlled drug with the intent to sell, subsequent offense, and one count of possession of a controlled drug, subsequent offense. See RSA 318-B:2, :26 (Supp. 2015).

The defendant moved to suppress all of the evidence obtained as a result of the inventory search of his vehicle, arguing that it violated his rights under the State and Federal Constitutions. See N.H. CONST. pt. I, art. 19; U.S. CONST. amends. IV, XIV. He further argued that, because the officers would not have arrested him and, thereafter, obtained the warrant to search his home but for their unlawful search of his vehicle, the evidence later found in his home should be suppressed as fruit of the illegal search. See State v. Morrill, 169 N.H. 709, 717 (2017) ("The fruit of the poisonous tree doctrine requires the exclusion from trial of evidence derivatively obtained through a violation of Part I, Article 19 of the New Hampshire Constitution." (quotation omitted)). The State objected, arguing that the inventory search was lawful. At the hearing, however, the State agreed that if the inventory search was not valid, then the evidence later found in the defendant's home should be suppressed as fruit of the illegal search.

The trial court found that the inventory search was invalid because, at the time that the search occurred, the vehicle was neither in the custody of the police, nor was it impounded and, therefore, the officers did not have authority to conduct the search. The court further found that the inventory search was otherwise unreasonable because it did not serve any of the important non-investigative government interests underlying the inventory search exception to the warrant requirement. The State moved for reconsideration, which the court denied, and this appeal followed.

On appeal, the State argues that the trial court erred by determining that Carlson's inventory search of the vehicle did not fall within the inventory search exception to the warrant requirement. The State contends that "[a]n inventory search of a lawfully impounded vehicle done pursuant to a neutral police policy is a reasonable search under Part I, Article 19 of the New Hampshire Constitution and the Fourth Amendment to the United States Constitution." It maintains that, here, the inventory search of the vehicle was reasonable because Carlson lawfully ordered that the vehicle be towed, and performed the inventory search pursuant to a neutral policy. We first address the State's argument under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's findings unless they lack support in the record or are clearly erroneous. State v. Newcomb, 161 N.H. 666, 670 (2011). However, we review the trial court's legal conclusions de novo. Id.

Part I, Article 19 of the New Hampshire Constitution provides that every citizen has "a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." N.H. CONST. pt. I, art. 19. Warrantless searches are per se unreasonable unless they fall within the narrow confines of a judicially crafted exception. Newcomb, 161 N.H. at 670. The State has the burden of proving that the search falls within one of the exceptions. Id.

Inventory searches fall within a well-defined exception to the warrant requirement. See id. Such searches are permissible because they serve important non-investigative government interests, including protecting an owner's property while it is in the custody of police, insuring against claims of lost, stolen, or vandalized property, and guarding the police from danger. Id. We have previously recognized that inventory searches are permissible so long as they are conducted pursuant to a neutral policy. Id.; see also Colorado v. Bertine, 479 U.S. 367, 374 (1987) (concluding that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment"). A neutral policy reduces police discretion to search at will and turn an inventory procedure into an investigative search. Newcomb, 161 N.H. at 671.

The State argues that the inventory search was reasonable in this case because it was conducted in accordance with the LPD inventory search policy. We agree.

Our cases have repeatedly emphasized that the touchstone of the validity of an inventory search is whether the search is conducted pursuant to what we have called a "neutral policy" that, although it may grant the police some measure of discretion, provides standardized criteria that give the police clear guidance on how such discretion is to be exercised. See id. at 671 (explaining that "an officer must conduct a search according to a neutral policy, which gives police clear guidance"); State v. Denoncourt, 149 N.H. 308, 311 (2003) (same); see also Bertine, 479 U.S. at 374. Absent evidence of a pretextual motive, none of our prior cases suggest that, to establish the validity of an inventory search, the State must show something more than that the search was conducted in compliance with a valid inventory policy that serves to protect non-investigative government interests.

Here, the relevant portions of the LPD inventory search policy provide:

> It is the policy of the Laconia Police Department that every vehicle that is taken into custody or towed under orders of a member of this Department shall have the contents of the vehicle inventoried. The purposes of this inventory are: to protect any property that may be in the vehicle at the time; to protect the Department from wrongful allegations concerning the loss of property; and to reduce the likelihood of injury to Department members and others from objects in the vehicle which may pose a threat of injury.

> I.     WHEN TO CONDUCT AN INVENTORY SEARCH

> A.     A lawful inventory search of a vehicle shall be conducted by members of this Department whenever:

> . . .

> 4.     The vehicle being towed cannot be safely driven because of a safety defect, or is unregistered or uninspected, and is towed at the request of a member of this Department[.]

(Bolding omitted.)

We interpret written documents de novo, Petition of Warden (State v. Roberts), 168 N.H. 9, 18 (2015), and we have previously interpreted the language of an inventory search policy according to its plain language, see Newcomb, 161 N.H. at 672. The plain language of the LPD inventory search

policy states that an inventory search "shall be conducted by members of [the Laconia Police Department] whenever . . . [t]he vehicle being towed cannot be safely driven because . . . [it] is unregistered or uninspected, and is towed at the request of a member of [the] Department[.]"  It further provides that the purposes of taking an inventory of any vehicle towed under orders of the Laconia Police Department are to serve the non-investigative government interests of protecting "any property that may be in the vehicle at the time," protecting "the Department from wrongful allegations concerning the loss of property," and reducing "the likelihood of injury to Department members and others from objects in the vehicle which may pose a threat of injury."

The defendant does not allege that the policy itself is unconstitutional, in that it is not neutral or reasonable on its face.  Moreover, the record contains no evidence, nor does the defendant claim, that the inventory search "was a pretext concealing an investigatory police motive."  South Dakota v. Opperman, 428 U.S. 364, 376 (1976); see also State v. Hardy, 384 So. 2d 432, 435 (La. 1980) ("The conduct of the police in this case thus indicates that the authorities did not conduct a true inventory search of defendant's car but, instead, set out on a warrantless search of the vehicle without probable cause.").  Thus, because the LPD inventory search policy requires an inventory search to be conducted whenever a vehicle is "unregistered . . . and is towed at the request of a member of [the] Department," once the decision was made to have the vehicle towed because it was unregistered, the officers did not have discretion not to conduct an inventory search of its contents regardless of the location to which the vehicle was towed.

Nonetheless, the defendant contends that the facts in this case did not trigger the LPD inventory search policy.  Specifically, he maintains that "the officers relinquished control [of the vehicle] to [the defendant] thereby negating any need for them to conduct an inventory."  Here, however, the trial court found that the officers decided to cite the defendant for failing to display plates and violating the speed limit.  At the suppression hearing, Carlson explained that he cited the defendant for failure to display plates because the vehicle was "unregistered."  The trial court further found that, as a result of their decision to cite the defendant for failure to display plates, the officers determined that the vehicle would have to be towed and that Black contacted dispatch to request a tow truck.  The court found that, at that point, Carlson informed the defendant of the citations, and "that he would have to seize the Pontiac's license plates and that a tow truck had been summoned."  Under these circumstances, we conclude that the LPD inventory search policy applied and thereby authorized the officers to conduct an inventory search of the vehicle.

Accordingly, we conclude that the inventory search did not violate Part I, Article 19 of our State Constitution.  Because the Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances, we reach the same result under the Federal Constitution. See State v. Finn, 146 N.H. 59, 61 (2001); Bertine, 479 U.S. at 374.  Therefore,

we hold that the trial court erred by granting the defendant's motion to suppress.

Reversed and remanded.

CONBOY, J., sat for oral argument but did not participate in the final vote; DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,**
**Clerk**
