Rockingham
No. 2008-328

THE STATE OF NEW HAMPSHIRE

v.

NILSON DE LA CRUZ

Argued: March 12, 2009
Opinion Issued: April 9, 2009

*Kelly A. Ayotte*, attorney general (*Susan P. McGinnis*, senior assistant attorney general, on the brief and orally), for the State.

*Buchanan, Maynard & Parodi, PLLC*, of Nashua (*Steven L. Maynard* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, Nilson De La Cruz, appeals his conviction in the Superior Court (*Nadeau*, J.) for operating a motor vehicle after having been certified as a habitual offender. *See* RSA 262:23 (Supp. 2008). The sole issue on appeal is whether the trial court erred in denying his motion to suppress. We affirm.

The parties stipulated to, or the record supports, the following facts. The defendant was certified as a habitual offender in May 2004, and his driving privileges were revoked for a minimum of four years. On August 24, 2007, he was driving a sport utility vehicle (SUV) through a parking lot in Hampton with his girlfriend in the passenger seat. A Hampton police officer on foot patrol observed that the SUV had the bass of its radio "at a very loud and unnecessary volume," which violated Hampton municipal ordinance article 7, section 3:704(a). The officer directed the SUV to stop and explained the reason for the stop. After a record check revealed that the defendant was a certified habitual offender, the officer arrested him.

The defendant filed a motion to suppress, arguing that he was subject to an unlawful seizure. He argued that the ordinance upon which the officer relied was unconstitutionally overbroad and vague, and that the officer therefore lacked reasonable suspicion to make an investigatory stop. The trial court denied the defendant's motion, stating that even if the ordinance was unconstitutional, an officer's good faith reliance upon an ordinance is an exception to the exclusionary rule. Following his conviction, he appealed to this court.

On appeal, the defendant argues that because we have rejected a general good faith exception to the exclusionary rule in New Hampshire, evidence stemming from his seizure must be suppressed under Part I, Article 19 of the State Constitution. Alternatively, he argues that even if there is an exception for reliance upon an ordinance, the State failed to present sufficient evidence of actual good faith reliance.

We assume, without deciding, that the municipal ordinance is unconstitutional. The only issue before us, therefore, is whether a police officer's good faith reliance upon an unconstitutional ordinance serves as an exception to the exclusionary rule. Because the issue is one of constitutional law, our review is *de novo. State v. Abram*, 156 N.H. 646, 651 (2008).

Because the United States Supreme Court has already decided this issue under the Federal Constitution, *see Illinois v. Krull*, 480 U.S. 340, 349-50 (1987), we confine our analysis to the New Hampshire Constitution.

■ Part I, Article 19 of our State Constitution provides that "[e]very subject hath a right to be secure from all unreasonable searches and seizures of his person, his house, his papers, and all his possessions." The provision serves to safeguard privacy and protect from government intrusion. *State v. Canelo*, 139 N.H. 376, 386 (1995). Under Part I, Article 19, a warrantless search or seizure is *per se* unreasonable and evidence derived from such a search or seizure is inadmissible unless the State proves that it comes within one of the recognized exceptions to the warrant requirement. *See State v. Davis*, 149 N.H. 698, 700 (2003); *State v. Turmelle*, 132 N.H. 148, 152 (1989); *State v. Beede*, 119 N.H. 620, 625 (1979), *cert. denied*, 445 U.S. 967 (1980). Evidence obtained in violation of a defendant's rights under Part I, Article 19 is inadmissible under the exclusionary rule. *State v. Beauchesne*, 151 N.H. 803, 817 (2005). Although we have indicated in the past that an exception to the rule may lie in the context of an officer's good faith reliance upon a statute, we have never explicitly recognized such an exception. *See State v. Jaroma*, 137 N.H. 562, 569 (1993); *Turmelle*, 132 N.H. at 154. Today, we explicitly adopt, under our own constitution, an exception to the exclusionary rule in the context of an officer's objectively reasonable reliance upon a statute or ordinance in forming reasonable suspicion that a crime has been, is being, or is about to be committed.

■ The exclusionary rule is a remedy for the violation of a defendant's right to be free from illegal searches and seizures, requiring any evidence obtained in violation of that right to be excluded. *Beauchesne*, 151 N.H. at 817. As we have previously stated, the exclusionary rule serves three purposes: (1) to deter police misconduct; (2) to redress the injury to the privacy of the victim of the unlawful search or seizure; and (3) to safeguard compliance with State constitutional protections. *Id.* at 818. The exclusion of evidence obtained in violation of a defendant's rights is a "logical and necessary corollary to achieve [those] purposes." *Canelo*, 139 N.H. at 386.

There are, however, exceptions when the exclusion of evidence would not further the purposes of the rule. Thus, the rule does not apply in certain limited circumstances; *e.g.*, if the State proves that the taint of the primary illegality is purged, *State v. Hight*, 146 N.H. 746, 750 (2001), if the police have an independent source for the evidence untainted by their misconduct, *State v. Holler*, 123 N.H. 195, 200 (1983), or if the police would have inevitably discovered the evidence, *State v. Hill*, 146 N.H. 568, 573 (2001). Although the United States Supreme Court has adopted an exception for a police officer's good faith reliance upon a constitutionally defective warrant,

*see United States v. Leon*, 468 U.S. 897, 922 (1984), we specifically rejected such an exception as "incompatible with and detrimental to our citizens' strong right of privacy inherent in part I, article 19." *Canelo*, 139 N.H. at 387. The question here, therefore, is whether the suppression of evidence obtained as a result of an officer's reliance upon an ordinance would further the purposes of the exclusionary rule.

In *Canelo*, we recognized that "[t]he warrant requirement embodied in part I, article 19 was intended to abolish general warrants and writs of assistance which had been used by the British to conduct sweeping searches based upon generalized suspicions and without specifying the places to be searched or things to be seized." *Canelo*, 139 N.H. at 386. The entire purpose of the provision "was to prohibit the issuance of warrants that did not satisfy the requirements of probable cause and particularity." *Id.* We noted that both police officers and magistrates have a duty to ensure that no warrant is issued without probable cause. Thus, recognizing an exception to the exclusionary rule for good faith reliance upon a constitutionally defective warrant would have permitted police officers to circumvent the warrant requirement and impugned the integrity of judicially approved warrants. *Id.* at 386-87. We therefore held that allowing an officer to rely upon a constitutionally defective warrant, even if approved by a magistrate, would violate our constitution. *Id.* at 387. The same concerns do not arise in this case.

Although police are required to provide constitutionally valid warrant applications to a magistrate, they are not called upon to weigh the constitutionality of laws. As the United States Supreme Court stated in *Michigan v. DeFillippo*:

> Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality — with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.

*DeFillippo*, 443 U.S. 31, 38 (1979). We find this reasoning to be persuasive. Enacting ordinances is a legislative function, and there is a presumption favoring the constitutionality of those regulations. *See Dow v. Town of Effingham*, 148 N.H. 121, 125 (2002). Thus, applying the exclusionary rule in this case would deprive the police of the benefit of the products of their lawful conduct, whereas the rule is intended to deter unlawful conduct. *See State v. Gravel*, 135 N.H. 172, 181 (1991).

Although society has a strong interest in protecting the right to privacy, creating an exception to the exclusionary rule in this case does not unreasonably intrude upon that right. As we stated in *Beauchesne*, there must be "a proper balance" between society's interest in protecting privacy and the public interest in prosecuting crimes. *Beauchesne*, 151 N.H. at 818. For that reason, the statute in question must support "objectively reasonable" reliance. *Krull*, 480 U.S. at 357. Although this exception has "(perhaps confusingly)" been called one of "good faith" reliance, it turns only upon the objective reasonableness of the officer's reliance. *See Herring v. United States*, 129 S. Ct. 695, 701 (2009). As the United States Supreme Court explained: "A statute cannot support objectively reasonable reliance if, in passing the statute, the legislature wholly abandoned its responsibility to enact constitutional laws." *Krull*, 480 U.S at 355. Furthermore, "a law enforcement officer [cannot] be said to have acted in [objectively reasonable] reliance upon a statute if its provisions are such that a reasonable officer should have known that the statute was unconstitutional." *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The standard of reasonableness is objective, and "does not turn on the subjective good faith of individual officers." *Id.*

Consideration of these factors leads us to conclude that suppression of evidence obtained as a result of an officer's objectively reasonable reliance upon a presumptively constitutional ordinance would not be consistent with the purposes of the exclusionary rule. We therefore hold that an officer's objectively reasonable reliance upon an ordinance or statute in forming reasonable suspicion is an exception to the exclusionary rule in Part I, Article 19 of our constitution.

The defendant argues that not extending *Canelo* to the facts of this case would contravene our decision in *Beauchesne*, where we stated that "we have unequivocally rejected a good faith exception to the exclusionary rule." *Beauchesne*, 151 N.H. at 819. That statement, however, was made in the context of holding that an officer's good faith belief that he had reasonable suspicion would not serve as an exception to the exclusionary rule when there were no facts that would provide an actual basis for such suspicion. *Id.* Our statement, therefore, remains true notwithstanding our holding today, because, absent facts that would provide actual basis for reasonable suspicion, an officer's good faith belief that reasonable suspicion exists is insufficient to justify a seizure.

We now turn to the defendant's argument that suppression was nonetheless required because the State failed to show that the officer's reliance was in good faith, and thus failed to show that he had reasonable suspicion. The issue, however, is one of objectively reasonable reliance; therefore, an officer's subjective good faith has no bearing upon our analysis. Because the

defendant does not argue that the ordinance was "such that a reasonable officer should have known that [it] was unconstitutional," *Krull*, 480 U.S. at 357, we confine our analysis to whether the officer had reasonable suspicion to stop the defendant. In reviewing the trial court's ruling, we accept its factual findings unless they lack support in the record or are clearly erroneous. *State v. Wallace*, 146 N.H. 146, 148 (2001). Our review of the trial court's legal conclusions, however, is *de novo. Id.*

For a police officer to undertake an investigatory stop, the officer must have reasonable suspicion, based upon specific, articulable facts taken together with rational inferences from those facts, that the particular person stopped has been, is, or is about to be, engaged in criminal activity. *State v. Roach*, 141 N.H. 64, 66 (1996). Here, the officer's report stated that he observed the bass of the defendant's radio to be "at a very loud and unnecessary volume," which was a violation of the Hampton municipal ordinance. The defendant stipulated that the officer would testify as to the contents of his report, but presented the testimony of his girlfriend to rebut the officer's statement. His girlfriend testified that the music was not loud and that she was able to talk on her cell phone without trouble.

As the fact finder, the trial court was free to credit the testimony as it saw fit, and we cannot say that its conclusion that the officer indeed heard loud music lacked support in the record or was clearly erroneous. Because playing loud music is a violation of the Hampton ordinance, an officer who observed such conduct would have had reasonable suspicion that the ordinance was being violated. Based upon the facts before us, we cannot say that the trial court erred in finding that the officer had reasonable suspicion meriting an investigatory stop.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and HICKS, JJ., concurred.