NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

————————————————

Rockingham
No. 2015-0338

THE STATE OF NEW HAMPSHIRE

v.

TERRY ADAMS, JR.

Argued: May 5, 2016
Opinion Issued: August 23, 2016

Joseph A. Foster, attorney general (Sean R. Locke, attorney, on the brief and orally), for the State.

Gleason Law Offices, P.C., of Haverhill, Massachusetts (Thomas J. Gleason on the brief and orally), for the defendant.

DALIANIS, C.J. The defendant, Terry Adams, Jr., appeals from his convictions of reckless conduct, RSA 631:3 (2007) (amended 2014), and simple assault, RSA 631:2-a (2007), following a jury trial in Superior Court (Schulman, J.). The defendant argues that the trial court erred by: (1) recalling the jury to correct an error in the verdict on the reckless conduct charge; (2) denying his motion to introduce exculpatory evidence at trial; and (3) prohibiting him from introducing evidence of alleged prosecutorial misconduct. We affirm.

The relevant facts follow. Based upon an incident that occurred on November 9, 2013, the defendant was charged with reckless conduct "by operating a motor vehicle, accelerating from a stopped position while the [victim] . . . was not completely inside said vehicle, and the passenger door was open, thereby causing [the victim] to fall from the vehicle onto the roadway, said vehicle being a deadly weapon." He was also charged with simple assault in that he "knowingly caused unprivileged physical contact to [the victim] by grabbing her around her neck and throat area."

At the close of a two-day trial, the jury received its instructions from the trial court and began its deliberations at approximately 11:21 a.m. The jury returned to the courtroom with its verdict at 3:41 p.m. When the jury foreperson announced the verdict on the reckless conduct charge, he cleared his throat or stumbled over his words. The clerk heard the words "not guilty" and recorded the verdict as such. The defendant and defense counsel heard "not guilty." The trial court "was not sure whether the foreperson said 'not guilty,' until [it] observed the Clerk write down the words 'not guilty.'" The trial court told the jury they were "free to go," but invited the jurors to return to the deliberation room so that the court could "thank them" for their service. After the jury left the courtroom at 3:43 p.m., the court conducted a bail hearing with trial counsel as to the jury's verdict on the simple assault charge, and the court recessed at 3:48 p.m.

The trial court then met with the jury in the deliberation room and the foreperson "almost immediately" asked whether the court heard him say "guilty" on the reckless conduct charge as he said he intended. The court immediately ended its discussion with the jurors and reconvened the parties in the courtroom at 3:52 p.m. The court explained what the foreperson had asked, and announced that it was going to "bring the jury back, take the verdict again on the reckless conduct charge, [and] poll the jury."

The jury returned to the courtroom at 3:56 p.m. The court explained to the jury that "[w]hen we took the verdict, the Clerk wrote down what she believed she heard. We're going to take the verdict again, and to the extent that there's any discrepancy, we will poll the jury to make sure that we have the right verdict from each juror, so there's no misunderstanding." The clerk then asked the foreperson "is the Defendant guilty or not guilty of the charge of reckless conduct," to which the foreperson answered, "Guilty." The clerk asked the jury, "So say you all, ladies and gentlemen of the jury," to which the jurors collectively replied, "Yes." The clerk then asked each individual juror to state his or her verdict with respect to the charge of reckless conduct, to which each juror individually responded, "Guilty." The trial court then dismissed the jury.

The defendant subsequently moved to enforce the original verdict rendered by the jury on the reckless conduct charge and to set aside the second verdict. Following a hearing, the trial court denied the motion. The

court noted that it had "since listened to the audio tape of the verdict at least a dozen times" and had "concluded that the foreperson did not say 'not guilty' with respect to the Reckless Conduct charge." The court stated that although the foreperson "certainly made some sort of noise prior to saying 'guilty[,]' . . . he neither said, nor meant to say[,] that the defendant was not guilty of the offense."

The trial court acknowledged that "the jurors were told they were discharged after they first announced their verdict." Nonetheless, the court concluded that "(a) the jury did not have the opportunity to re-deliberate the case, (b) the jury did not reconsider or alter its actual verdict, and (c) the jury was not exposed to any improper influences." The court "also conclude[d] that the jury recognized that its foreperson failed to properly annunciate the actual verdict." Thus, the court reasoned, "it was proper to recall the jury for the purpose of clarifying its verdict."

On appeal, the defendant argues that the jury's "not guilty" verdict on the reckless conduct charge "was final and irrevocable after it was announced by the Foreman, collectively endorsed by the jurors, recorded by the Clerk and the jury was formally discharged." He asserts that "[u]nder these circumstances," the trial court erred by "allow[ing] the jury to alter its verdict of not guilty." The State argues that "because the jury in this case had not left the protective shield of the court and re-entered the public it had not been discharged and the trial court sustainably exercised its discretion by recalling the jury so that it could correct an error that arose when the jury read the verdict the first time."

We reject the defendant's assertion that because "[a] verdict is valid and final when deliberations are over, the result is announced in open court, and no juror registers dissent," the trial court may not seek "clarification . . . after the jury has been discharged." Such a bright-line rule is not the law in New Hampshire. See Dearborn v. Newhall, 63 N.H. 301, 302-03 (1884) ("In some jurisdictions a recorded verdict cannot be amended by the jury after their separation; but in this state a different practice prevails."). This court has recognized that "[t]he recording of an erroneous verdict . . . does not necessarily render all [the verdict's] errors incurable; and the separation of jurors . . . does not necessarily disable them to undo the injustice of such a mistake." Id. at 303; see Caldwell v. Yeatman, 91 N.H. 150, 155 (1940) (explaining that the power to recall the jury is "one of the general supervisory powers of the court"). Rather, "[t]he power of the trial court to reconvene and interrogate a jury may be exercised whenever [the court] is of the opinion the jury may have made some mistake which produced their verdict." Bothwick v. LaBelle, 115 N.H. 279, 281 (1975) (quotation and ellipses omitted).

"The discretion of the trial court in this respect is broad." Id.; see State v. Santiago, 159 N.H. 753, 758 (2010) (ruling that trial court did not

3

unsustainably exercise its discretion by declining to reconvene the jury); Drop Anchor Realty Trust v. Hartford Fire Ins. Co., 126 N.H. 674, 683 (1985) (explaining that, in a civil case, whether to reconvene the jury five days after the close of trial was "within the sound discretion of the trial court"); State v. Low, 138 N.H. 86, 88 (1993) (holding that the defendant failed to demonstrate that the trial court unsustainably exercised its discretion by denying his motion to reconvene the jury to determine whether the jury members ignored the court's instructions). "We review the trial court's decision under an unsustainable exercise of discretion standard, and reverse only if the ruling is clearly untenable or unreasonable to the prejudice of a party's case." Santiago, 159 N.H. at 757.

In considering whether to reconvene a jury, the trial court should consider such factors as "the lapse of time since the close of trial" and the exposure of jurors to "improper influences." Drop Anchor, 126 N.H. at 683-84. Here, the trial court found that

> only a few minutes elapsed between the time of their "discharge" and the time they were recalled to clarify their verdict. During that time, they had no access to, or communication with the outside world. They went from the courtroom to the jury room and had no exposure to anybody other than the bailiff. They were then joined by the alternate, but even if she wished to dispute the verdict (and there is no evidence that she did), there was clearly insufficient time for even the briefest re-deliberation.

The record supports these findings, and we are not persuaded that the trial court unsustainably exercised its discretion to reconvene the jury to correct an error in the verdict. To the extent the defendant argues that, as a matter of law, the presence of the alternate juror in the jury room after the trial had ended subjected the jury to "outside influences," he does not sufficiently develop that argument for our review. See State v. Blackmer, 149 N.H. 47, 49 (2003). Likewise, although the defendant asserts that reconvening the jury constituted a violation of his "rights to due process of law and a fair trial and his double jeopardy rights, under both the Federal and State Constitutions," he fails to adequately develop his legal argument, and, therefore, we decline to address it. See State v. Chick, 141 N.H. 503, 504 (1996).

The defendant next argues that the trial court erred when it denied his motion to introduce evidence that the victim had burglarized the defendant's home approximately three weeks after the incident on November 9, 2013, giving rise to the charges in this case. Although the trial court allowed the defense to introduce evidence that the victim had been charged with and convicted of burglary, it did not allow the defense to introduce evidence of the specifics of the event, including that it was the defendant who was the victim of that crime. The defendant asserts that such evidence was admissible under

New Hampshire Rule of Evidence 404(b) "to show the alleged victim's motive and/or bias." The State asserts that the defendant "failed to demonstrate a common motive that would make revealing the defendant as the victim of the burglary relevant under Rule 404(b)." We review the trial court's ruling for an unsustainable exercise of discretion, and will reverse only if it was clearly untenable or unreasonable to the prejudice of the defendant's case. State v. Kim, 153 N.H. 322, 327 (2006).

The trial court permitted the defense to conduct a voir dire of the victim outside the presence of the jury. Following that voir dire, the trial court concluded that it "[didn't] see how what happened on the 28th of November, or at least the burglary of his house, beating him up, and so on and so forth, provides a motive for making a false report on November 9th." As the trial court explained, the burglary incident on November 28 "shows that [the victim] dislikes the Defendant. But that doesn't go to motive to fabricate on the 9th of November. That goes to bias." The court reasoned that it did not "see proof that a jury could reasonably find that this witness told an untrue tale on November 9th so that the Defendant would go to jail or get prosecuted. And when that didn't happen to her satisfaction, she burglarized his house, because first of all, burglarizing his house doesn't get him in jail. . . . I just don't see a common motive between the report on November 9th and the burglary . . . on November 28th."

We have reviewed the record and conclude that it supports the trial court's finding that the victim's testimony did not show a common motive that connected her decision to report the November 9, 2013 incident underlying the charges in this case to her decision to burglarize the defendant's home on November 28, 2013, approximately three weeks later. We note that the defendant never suggested to the trial court that the court had misunderstood or misinterpreted his argument regarding the notice issue. Because the defendant has failed to persuade us that the trial court unsustainably exercised its discretion when it precluded him from presenting such evidence, we affirm.

Furthermore, we agree with the State that at trial the defense did not rely upon bias as a ground for admitting evidence that it was the defendant's home that the victim subsequently burglarized. When asked by the trial court whether the defense had any grounds, other than motive, defense counsel answered, "No. No, Judge. Just motive." As the trial court explained to defense counsel, "if one witness commits a felony against another witness, that's evidence of their relationship, it's evidence of bias . . . . You're not making a bias argument." The court observed that if defense counsel did seek to admit the evidence on grounds of bias, "the jury needs to see the full relationship of these parties," and then "Pandora's box gets open." In response, defense counsel acknowledged: "[I]f I open the bias issue, I have a lot of trouble associated with that and so I'm trying to maintain the motive side of

5

the ledger because I think it applies[ ] [and] [b]ecause . . . bias just becomes entirely . . . uncontrolled." Based upon the record before us, we conclude that, to the extent that the defendant argues that the evidence was admissible to show bias, that issue is not preserved for our appellate review. See State v. Dodds, 159 N.H. 239, 244 (2009) (preservation requires a "contemporaneous and specific objection" and any objection not raised at trial is deemed waived (quotation omitted); see also State v. Young, 144 N.H. 477, 484-85 (1999).

The third issue raised by the defendant is whether the trial court erred by not allowing the defense to introduce evidence regarding alleged "prosecutorial overreaching." Although he asserts that "[t]he defense . . . wanted to introduce" evidence of alleged prosecutorial overreaching, and that "[t]he defense believes that the simultaneous prosecution of the defendant and the alleged victim . . . constitutes prosecutorial overreaching and/or selective prosecution," the defendant has failed to demonstrate that this issue was presented to, or addressed by, the trial court. As the appealing party, the defendant has the burden of providing this court with a record sufficient to demonstrate that he raised all of his appeal issues before the trial court. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004). Accordingly, we decline to address this issue for the first time on appeal.

Affirmed.

CONBOY, LYNN, and BASSETT, JJ., concurred.