NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

—————————————

Hillsborough-northern judicial district
Nos. 2013-0480
     2013-0635
     2015-0429


THE STATE OF NEW HAMPSHIRE

v.

SCOTT ROBINSON

Argued: November 9, 2016
Opinion Issued: June 2, 2017

Joseph A. Foster, attorney general (Susan P. McGinnis, senior assistant attorney general, on the brief and orally), for the State.


Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.


CONBOY, J. The defendant, Scott Robinson, appeals his convictions for armed robbery and first degree assault. See RSA 636:1 (2016); RSA 631:1 (2007). We affirm.

The defendant was previously convicted on these charges and appealed, arguing that the Trial Court (Barry, J.) erred in denying his motion to suppress.

State v. Robinson, 158 N.H. 792, 794 (2009) (Robinson I). We reversed his convictions, holding that the trial court erred in concluding that exigent circumstances permitted the warrantless entry by police into his apartment. Id. at 802-03.

Upon remand, the defendant again moved to suppress, inter alia, physical evidence obtained "from the time of the warrantless entry into his apartment" and the fruits thereof. The Trial Court (Garfunkel, J.) denied his request to suppress the physical evidence, after finding that it was properly seized during a subsequent search pursuant to a valid warrant.

The defendant was convicted following a subsequent jury trial. He thereafter filed motions for a new trial in 2013 and in 2014, arguing in both motions that his trial counsel had been ineffective. The motions were denied after hearings, and the defendant has appealed. We consolidated the defendant's direct appeal of his convictions with his appeals of the rulings on his motions for new trial.

In this appeal, the defendant argues: (1) that the trial court erred by considering, upon remand, the doctrines of independent source and inevitable discovery; (2) that his trial counsel was ineffective because she did not argue that the doctrines of law of the case and waiver barred the State from raising the independent source and inevitable discovery arguments in the trial court following remand; and (3) that, even if the trial court did not err in considering the State's arguments, remand is necessary to address certain factual issues. He also contends that our holding in Robinson I — that the police did not violate his constitutional rights when they inserted a key, found at the site of the robbery, into the lock of his car, id. at 796-97 — conflicts with recent United States Supreme Court decisions.

The following facts are drawn from the trial court's June 2011 post-remand order which denied the defendant's motion to suppress. On March 18, 2006, Manchester police officers responded to a reported robbery at a Manchester variety store. A witness reported that a white male, wearing a New England Patriots jacket and green hooded sweatshirt, entered the area behind the counter in the store, stabbed the store clerk, and took money from the register. The police searched the area behind the counter and found a key ring holding three keys; one of the keys belonged to a Kia automobile. The store employees stated that the key did not belong to any of them, and so the police assumed that the key belonged to the suspect. The police found a Kia parked on the street nearby, and determined from witness reports that the suspect had run in the direction of the vehicle before turning into an alley. They relayed the license plate number of the Kia to police dispatch and learned that the Kia belonged to the defendant, who lived eight blocks from the site of the robbery.

Several police officers headed to the defendant's apartment; another officer took the key and inserted it in the door of the Kia and determined that it fit the lock (key test).  This information was relayed to the officers at the defendant's apartment building and was later included in an application for a warrant to search the defendant's apartment.  It is undisputed that when the officers first entered the defendant's apartment, they did so without a warrant.  During the initial entry, they observed a green sweatshirt and a Patriots jacket in the defendant's closet.  Subsequently, after obtaining a warrant, they again entered the apartment and seized the green sweatshirt, the Patriots jacket and a knife.

The defendant first argues that the trial court erred in considering, upon remand, the independent source and inevitable discovery exceptions to the exclusionary rule.  Before addressing the defendant's contention that the exclusionary rule applied to the challenged evidence under both the State and Federal Constitutions, we briefly discuss the evolution of these doctrines.

The general rule is that evidence must be excluded if it is discovered as a result of police misconduct.  State v. Holler, 123 N.H. 195, 199 (1983).  "The exclusionary rule enjoins the Government from benefiting from evidence it has unlawfully obtained."  United States v. Crews, 445 U.S. 463, 475 (1980).  The United States Supreme Court has recognized, however, that evidence discovered as a result of unlawful conduct does not automatically become forever inaccessible.  Silverthorne Lumber Co v. United States, 251 U.S. 385, 392 (1920).  "If knowledge of [facts] is gained from an independent source they may be proved like any others."  Id.  "Accordingly, information which is received through an illegal source is considered to be cleanly obtained when it arrives through an independent source."  United States v. Soto, 799 F.3d 68, 81-82 (1st Cir. 2015) (quotation omitted).  "The independent source doctrine teaches us that the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred."  Nix v. Williams, 467 U.S. 431, 443 (1984).

In Wong Sun v. United States, 371 U.S. 471 (1963), the Supreme Court discussed the analysis used to determine whether the independent source exception would apply to challenged evidence:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police.  Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by

3

exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

Wong Sun, 371 U.S. at 487-88 (citation omitted).

The Supreme Court subsequently adopted the inevitable discovery doctrine as an exception to the exclusionary rule in Nix. Nix, 467 U.S. at 444. Under this doctrine, "illegally seized evidence is admissible if a search was justified, and the evidence discovered illegally would inevitably have come to light in a subsequent legal search." Holler, 123 N.H. at 200. "The inevitable discovery doctrine, with its distinct requirements, is in reality an extrapolation from the independent source doctrine: Since the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." Murray v. United States, 487 U.S. 533, 539 (1988). We have endorsed the application of both the inevitable discovery and the independent source exceptions to the exclusionary rule when evaluating admissibility challenges under our State Constitution. See, e.g., Holler, 123 N.H. at 200-01; State v. Beede, 119 N.H. 620, 629-30 (1979) (discussing inevitable discovery doctrine).

In the extensive appellate record, the parties have referred to the doctrine implicated under the State's alternative admissibility argument as both the inevitable discovery doctrine and the independent source doctrine. In his brief, in this appeal, the defendant contends that the trial court "appears to have accepted the State's argument" that the inevitable discovery doctrine applies to the admissibility of the green sweatshirt and the Patriots jacket. We note that at the 2015 hearing on the defendant's most recent motion for new trial, the State clarified that although the parties had "been using the term inevitable discovery . . . this is really an independent source issue." Regardless of which doctrine applies, however, the substance of the defendant's position is the same; that is, the State was foreclosed from pressing in the post-remand trial court its alternative argument regarding the admissibility of the derivative evidence because it did not make that argument in Robinson I. For ease of reference, we use "independent source" to refer to the doctrines collectively as we address the defendant's remaining arguments. See Murray, 487 U.S. at 539 (inevitable discovery doctrine is extrapolation of the independent source doctrine).

We first consider the defendant's arguments that: (1) the trial court erred in considering, upon remand, the State's alternative argument regarding the admissibility of the derivative evidence; and (2) his trial counsel (who is not his appellate counsel) was ineffective because she did not argue that the doctrines of law of the case and waiver barred the State from raising its alternative argument following remand. Because the defendant did not argue in the post-remand trial court that the State was procedurally barred from presenting its

4

alternative argument, he asks that we consider under our plain error rule whether the trial court erred in considering the argument. See Sup. Ct. R. 16-A.

For us to find plain error: (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights. State v. Thomas, 168 N.H. 589, 604 (2016). If all three of these criteria are met, we may then exercise our discretion to correct a forfeited error only if the error meets a fourth criterion: the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. Id.

In his 2007 motion to suppress, the defendant argued that the key test was an improper search and the warrantless entry into his apartment was unlawful because there were no exigent circumstances. The defendant contended that, but for the key test, the police would not have been at his apartment. He also challenged the validity of the State's subsequently obtained search warrant, arguing that it was based upon observations made during the warrantless entry. The State argued that exigent circumstances authorized the initial warrantless entry into the defendant's apartment, and, alternatively, that the evidence seized from the defendant's apartment was seized pursuant to a valid search warrant.

The trial court denied the defendant's motion to suppress, finding that exigent circumstances justified the warrantless entry and that "[c]ontrary to the defendant's assertion, the police were able to identify the defendant as the owner of the vehicle, his physical description, prior record, and address, from the license plate number on the vehicle." The trial court further ruled that, because exigent circumstances permitted the warrantless entry into the defendant's apartment, "it was appropriate for the [warrant] affidavit to reference, and the issuing judge to consider, the officers' observations." The court did not address the State's alternative argument that the evidence seized from the defendant's apartment pursuant to the search warrant was otherwise properly admissible.

Following his 2007 conviction, the defendant filed his first appeal, setting forth in his notice of appeal challenges to: (1) the key test; (2) the warrantless entry into his apartment; (3) the admissibility of the search warrant evidence; and (4) the sufficiency of the State's evidence at trial. In his brief, however, the defendant expressed his sole argument as follows: "The trial court erred in denying Robinson's motion to suppress, because the warrantless entry into Robinson's home was not supported by the exigent circumstances exception to the warrant requirement." (Emphasis added; capitalization omitted.) The defendant referred to the admissibility of the search warrant evidence only in the final paragraph of his brief. Without any developed argument, he asserted:

5

The court declined to suppress the fruits of the search warrant because it held the initial entry did not violate the State or Federal Constitutions. Because the court erred in that regard, the evidence gathered as a result of the search warrant must also be suppressed. Alternatively, this Court must remand for a hearing on the scope of the evidence that must be suppressed as a result of the unconstitutional warrantless entry into [the defendant's] home.

(Citation omitted.) The defendant did not address the State's alternative admissibility argument that had been previously presented in the trial court.

Thus, the defendant's argument in his first appeal centered on a challenge to the trial court's ruling that exigent circumstances justified the warrantless entry into his home. We agreed in Robinson I that the warrantless entry was not justified by exigent circumstances, Robinson I, 158 N.H. at 802-03. The question before us now is whether the State was foreclosed from pursuing, upon remand, its alternative argument — originally raised in the trial court prior to the defendant's Robinson I appeal — because it did not pursue that argument on appeal in Robinson I. Based upon the record before us, we conclude that the State was not so foreclosed, and therefore the trial court did not commit plain error in considering it.

At the 2015 hearing on his motion for new trial, the defendant acknowledged that the State had raised its alternative argument before the trial court in 2007. He argued, however, that because the State did not address this argument in its brief filed in Robinson I, it was barred from raising the issue in the trial court following remand. The Trial Court (Nicolosi, J.) was unpersuaded by this argument, finding that, because in his first appeal, the defendant had failed to address the State's argument in his brief, and failed to provide relevant supporting documentation, the State was not obligated to address the issue in its brief.

Under the law of the case doctrine, "only such issues as have actually been decided, either explicitly, or by necessary inference from the disposition [of the first appeal], constitute the law of the case." Saunders v. Town of Kingston, 160 N.H. 560, 566 (2010) (quotation omitted). We recognize that a party in a second appeal may not present an argument it omitted in the first appeal if that argument raises points of law necessarily involved in the disposition of the first appeal. See id. However, "points of law not reached and decided in the first appeal remain open on remand and on a second appeal." Id. (quotation omitted). "The doctrine does not bar litigation of all questions which were within the issues of the case and which, therefore, might have been decided." Field v. Mans, 157 F.3d 35, 40 (1st Cir. 1998) (quotations omitted). "Questions that have not been decided do not become law of the case merely because they could have been decided." Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4478, at 789 (1981).

6

Because our opinion in Robinson I determined only the legality of the key test and whether the warrantless entry into the defendant's home was justified by exigent circumstances, see Robinson I, 158 N.H. at 797, 803, the law of the case doctrine did not bar the trial court from considering, upon remand, the additional arguments presented by the State in opposition to the defendant's motion to suppress.

The waiver doctrine, like the law of the case doctrine, "serves judicial economy by forcing parties to raise issues whose resolution might spare the court and parties later rounds of remands and appeals." United States v. Castillo, 179 F.3d 321, 326 (5th Cir. 1999), rev'd on other grounds, 530 U.S. 120 (2000) (citation and quotation omitted). But it "differs from the law-of-the-case doctrine in that it arises as a consequence of a party's inaction, not as a consequence of a decision on our part." Id. (citation omitted). As the First Circuit has held, whether "there is a waiver depends not . . . on counting the number of missed opportunities . . . to raise an issue, but on whether the party had sufficient incentive to raise the issue in the prior proceedings." United States v. Ticchiarelli, 171 F.3d 24, 32-33 (1st Cir. 1999). Here, given the trial court's rulings on the defendant's 2007 suppression motion and the issues raised by the defendant in his first appeal, we cannot conclude that the State had any incentive to address in its responsive brief the alternative argument that it had previously made in the trial court.

Accordingly, we affirm the trial court's decision to permit the State to pursue, upon remand, its alternative argument regarding admissibility of the challenged evidence.

Because the trial court did not err in allowing the State to pursue this alternative admissibility argument, the court also did not err in finding that defense counsel was not ineffective in failing to raise the issues of law of the case and waiver. See, e.g., State v. Chase, 135 N.H. 209, 212 (1991) (to prevail on claim of ineffective assistance, defendant must demonstrate both that counsel's performance was deficient and that, but for those errors, reasonable probability exists that result of trial would have been different).

The defendant also argues that the independent source doctrine does not apply in this case and that the trial court erred in not applying the exclusionary rule. The defendant cites Murray in support of his argument. In Murray, the Supreme Court was asked to determine whether evidence "that had been observed in plain view at the time of a prior illegal entry" but subsequently obtained "pursuant to an independently obtained search warrant" must be suppressed. Murray, 487 U.S. at 535. The Court observed that the independent source doctrine is based upon the policy "that, while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied [had no violation occurred]." Id. at 542. Accordingly, if a "later, lawful seizure is

7

genuinely independent of an earlier, tainted one . . . , there is no reason why the independent source doctrine should not apply." Id. The Court then remanded the case to allow the trial court to resolve the following issues: (1) whether the agents' decision to seek a warrant was prompted by what they had seen during their initial entry; and (2) whether the information obtained during the initial entry was presented to the magistrate and affected his decision to issue the warrant. Id. at 542-44.

Notwithstanding the analysis in Murray, the defendant asks that we hold that the protection of the exclusionary rule is broader under Part I, Article 19 of the State Constitution than under the Fourth Amendment. Specifically, he asks that we "hold that, where the police conduct an unconstitutional, warrantless search, and where no effort was made to begin the process of applying for a warrant at the time of the unconstitutional search, the exclusionary rule under Part I, Article 19 . . . bars admission of the evidence first discovered in the course of that search." If we endorse his proposed standard, he argues, it follows that the exclusionary rule applies in this case because the police had not begun applying for a warrant at the time of the entry and they included observations obtained from the illegal search in their application. Alternatively, if we decline his request to expand the protection of Part I, Article 19, he contends that remand to the trial court is necessary to allow the fact finder to determine: (1) whether the officers' decision to obtain a search warrant was prompted by what they saw during their initial entry; and (2) whether observations from the initial entry that were included in the supporting affidavit affected the magistrate's decision to issue the warrant.

We are not persuaded by the defendant's proposal to require the process of applying for a warrant to have begun at the time of the unconstitutional search in order for the independent source doctrine to apply. We agree with the Supreme Court that "if a later, lawful seizure is genuinely independent of an earlier tainted one . . . , there is no reason why the independent source doctrine should not apply." Id. at 542. We see no reason to impose a requirement that the police have begun the process of applying for a search warrant at any particular time. The requirement that a later, lawful seizure pursuant to a warrant be genuinely independent of an earlier, tainted one serves to support the policy underlying the exclusionary rule by assuring suppression of the results of the later seizure when the decision to seek the warrant was prompted by what was seen during the initial entry. See id. at 542-44.

To the extent that the defendant requests that we remand this case to the trial court to address whether the observations made by the police during their initial warrantless entry into the defendant's apartment affected either their decision to seek the search warrant or the magistrate's decision to issue the warrant, we conclude that he has failed to preserve this issue for our review. See, e.g., State v. Adams, 169 N.H. 293, 299 (2016).

The record before us demonstrates that, following Robinson I, the defendant filed a renewed motion to suppress in the post-remand trial court; the State filed an objection. The State also filed a motion to clarify "the validity of the warrant relied upon by the police to search the defendant's apartment after the initial entry." In his objection to the State's motion to clarify, the defendant argued that the inevitable discovery doctrine did not apply because our precedent supported its application "only in narrowly prescribed circumstances" and that the doctrine should not be used to "reward unlawful conduct by the police or to avoid the search warrant requirement." The defendant did not ask the trial court to make the factual findings that he now argues are required by Murray.

In its subsequent order, the trial court found that the State and the defendant agreed "that the warrant contain[ed] information obtained during, or tainted by, the initial unlawful entry" and that they "also agree[d] that the court must excise and ignore the tainted language and then reevaluate probable cause." See State v. Plch, 149 N.H. 608, 619-20 (2003) (holding that "to test the validity of a search warrant issued on an affidavit referencing illegally seized evidence, the reviewing court excises the tainted information and examines the remaining information to determine whether it establishes probable cause"). The defendant does not challenge these findings on appeal.

Accordingly, consistent with our decision in Plch, and with the parties' agreement, the trial court excised from the search warrant affidavit information obtained as a result of the warrantless entry, and found that the "post-excised affidavit established probable cause to search the apartment for the items identified in the warrant." The court further found that "the knife, jacket and sweatshirt were seized during the search pursuant to the warrant and not during the unlawful entry." Based upon these findings, the trial court denied the defendant's motion to suppress the challenged physical evidence. Notably, the defendant does not argue in this appeal that the post-remand trial court erred in finding probable cause under Plch.

To the extent that the defendant now argues that the trial court should have addressed the questions set forth in Murray other than through the findings that it did make, he did not make this request in the trial court. Accordingly, the issue of whether the trial court was required to make additional factual findings to support its probable cause determination has not been preserved for our review. See Adams, 169 N.H. at 299; see also United States v. Dessesaure, 429 F.3d 359, 365-70 (1st Cir. 2005) (discussing whether, when evaluating whether probable cause supported issuance of search warrant, Murray requires more than excising information obtained during prior illegal search); United States v. Herrold, 962 F.2d 1131, 1140-44 (3d Cir. 1992) (discussing exclusionary rule exceptions, including independent source doctrine, and factual issues to be addressed in light of Murray when warrant is tainted by illegally obtained information).

9

The defendant next argues, as he did in Robinson I, that the police violated his rights under Part I, Article 19 of the New Hampshire Constitution and the Fourth Amendment to the United States Constitution when they conducted the key test. See Robinson I, 158 N.H. at 795. In Robinson I, we held that "the privacy interest at stake is so small that the officers [did] not need probable cause" to ascertain whether the key fit the lock to the vehicle's door. Id. at 796 (quotation omitted). Rather, we concluded that "the private information protected by Part I, Article 19 is what lies behind the door." Id. We then reviewed his challenge under the Federal Constitution, stating that "[w]hether the defendant's Fourth Amendment rights were violated turns upon whether he had a reasonable expectation of privacy in the thing searched." Id. at 797. We concluded that "[b]ecause the defendant had no expectation of privacy in this case, the officer's conduct did not violate the protections of the Fourth Amendment." Id.

The defendant now argues that the United States Supreme Court's subsequent opinion in United States v. Jones, 132 S. Ct. 945 (2012), "squarely contradicts" our holding in Robinson I. He also cites Florida v. Jardines, 133 S. Ct. 1409 (2013), in support of this argument. He contends that "[b]ecause Jones and Jardines are contrary to the rationale this Court relied on in the first appeal, the law of the case doctrine does not preclude reexamination of this issue."

We will assume, without deciding, that the defendant has properly preserved this argument and that the cited cases would alter the conclusion that we reached in Robinson I that the key test was not an unreasonable search, but see California v. Acevedo, 500 U.S. 565, 581 (1991) (Scalia, J., concurring) ("The Fourth Amendment does not by its terms require a prior warrant for searches and seizures; it merely prohibits searches and seizures that are 'unreasonable.' What it explicitly states regarding warrants is by way of limitation upon their issuance rather than requirement of their use."). We will also assume both that the key test results should not have been included in the search warrant affidavit and that the trial court erred in admitting the results of the key test at trial.

We first address the search warrant affidavit. We note at the outset that the only information obtained from the key test was that the Kia key found at the scene of the robbery fit a Kia vehicle located on the street nearby. Prior to conducting the key test, the police had obtained the following information: (1) the Kia key was found on the floor behind the counter in the area where the suspect had stabbed the victim; (2) witnesses gave a physical description of the suspect, including that he was wearing a green hooded sweatshirt and a blue Patriots jacket; (3) a witness pursued the suspect from the store and saw him run to Amory Street, approximately 250 feet away; (4) a Kia vehicle was parked in that area on Amory Street; and (5) the suspect ran out of the store "right to the [Kia] and then down the alley, which was two houses down from where the

10

car was parked." At the 2007 hearing on the defendant's motion to suppress, an investigating officer testified: "I would assume based on my knowledge that he stopped at the vehicle and realized he didn't have his key any more and then went down the alley." The trial court found in its order addressing the motion to suppress that "the police did not rely upon the key actually fitting the vehicle, but rather, acted upon information obtained through the vehicle's registration" prior to the key test when they went to the defendant's apartment. The court also found that the police had identified the defendant as the owner of the vehicle and obtained his physical description, prior record, and address, from the license plate number on the vehicle and that they were already at his apartment when the key test was conducted.

Thus, even if we assume that the key test results were illegally obtained, and we excise that limited information from the search warrant affidavit, see Plch, 149 N.H. at 20, we conclude that the remaining information established probable cause to issue the search warrant.

We turn to the evidence presented at trial. The State argues that to the extent that the trial court erred in admitting evidence of the key test results at trial, any error was harmless. We agree. We note that the erroneous admission of evidence is harmless only if the State proves beyond a reasonable doubt that the verdict was not affected by its admission. State v. Cooper, 168 N.H. 161, 165 (2015). At trial, the State presented testimony by two eyewitnesses who identified the defendant as the individual who had stabbed the victim and robbed the store. The State also presented evidence that the Kia key was found on the floor in the area where the victim was stabbed, that a witness pursued the defendant from the store and saw him run to Amory Street and that a Kia vehicle was parked in the area on Amory Street. The jury also heard evidence that, at the time of the robbery, it was wet outside and that within five to twenty minutes after the robbery, the police found wet footprints inside the apartment building where the defendant lived; the footprints originated on the first floor and went up the stairs and led to the defendant's apartment.

Accordingly, given the overwhelming other evidence of the defendant's guilt, we conclude that the error, if any, in admitting the key test results was harmless.

Affirmed.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.

11