NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

————————————————

Rockingham
Case No. 2024-0344
Citation: State v. Rodriguez, 2025 N.H. 43

THE STATE OF NEW HAMPSHIRE

v.

CHRISTOPHER ANDREW RODRIGUEZ

Argued: May 20, 2025
Opinion Issued: September 19, 2025

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Sam M. Gonyea, assistant attorney general, on the brief and orally), for the State.

Wilson, Bush & Keefe, P.C., of Nashua (Charles J. Keefe on the brief and orally), for the defendant.

DONOVAN, J.

[¶1] Following a bench trial on stipulated facts, the defendant, Christopher Andrew Rodriguez, was convicted on two counts of aggravated felonious sexual assault (AFSA), see RSA 632-A:2, I (Supp. 2024); nine counts of manufacture of child sexual abuse images, see RSA 649-A:3-b (2016); three

counts of possession of child sexual abuse images, see RSA 649-A:3 (2016); three counts of felonious sexual assault (FSA), see RSA 632-A:3, II (Supp. 2024); one count of certain uses of computer services prohibited, see RSA 649-B:4, I (2016); two counts of second degree assault, see RSA 631:2, I(f) (2016); five counts of sexual assault, see RSA 632-A:4, I(b) (Supp. 2024); one count of prohibited sales, see RSA 179:5, I (2022); and one count of interference with custody, see RSA 633:4, II (2016). On appeal, he argues that the Superior Court (St. Hilaire, J.) erred by denying his motion to suppress evidence obtained from his cell phone. We conclude that the trial court properly denied the defendant's motion to suppress because the evidence was obtained from the defendant's cell phone pursuant to a search warrant based upon an independent source. Accordingly, we affirm.

I. Facts

[¶2] The following facts are taken from the trial court's order denying the defendant's motion to suppress, are established by the evidence submitted at the suppression hearing, or are undisputed. On October 16, 2020, officers from the Portsmouth Police Department were dispatched to a hotel in response to a report regarding a juvenile who had been reported missing to the Dover Police Department. Hotel staff directed the officers to the room where they believed the missing juvenile was present. One of the officers knocked on the door to the room, and the defendant answered.

[¶3] From the doorway, one of the officers observed a juvenile matching the description from the missing juvenile case. She was lying on the bed, apparently unclothed under the covers. The officer observed red marks on her neck and legs. He also observed empty beer bottles and alcohol containers around the room. When the officer asked the juvenile whether she had consumed any alcohol, she responded that she had.

[¶4] The defendant, who was twenty-four years old at the time, agreed to speak with one of the officers outside the hotel room. He explained that he met and befriended the juvenile at a bus stop in Dover. He also stated that he believed the juvenile was over the age of eighteen because they had consumed alcohol together at a bar. He disclosed that he had consumed "a few drinks, but not too many due to a stomach issue."

[¶5] The officers arrested the defendant for allegedly providing alcohol to the juvenile. See RSA 179:5, I. An officer performed a search incident to arrest and removed various items, including a cell phone, from his possession. According to the Portsmouth police, the Dover police had requested that the defendant's cell phone be held until it completed the missing juvenile investigation. The police transported the defendant to the Portsmouth police station and secured his cell phone as evidence.

2

[¶6] When she arrived at the station, a Portsmouth detective learned that the Dover police had already spoken with the juvenile as part of the missing juvenile investigation. The Dover police informed her that the juvenile had disclosed running away from home, consuming alcohol, and having sex with the defendant in the hotel room. The Portsmouth detective subsequently interviewed the juvenile. The juvenile, who was fourteen or fifteen years old, disclosed to the detective that she had met the defendant on Instagram, told him how old she was, and discussed her mental health issues with him. She informed the detective that she ran away from home, met the defendant at a train station, stopped to purchase alcohol, and subsequently consumed alcohol at a bar with the defendant. She also disclosed additional details regarding her sexual interactions with the defendant.

[¶7] Following the interview with the juvenile, the detective spoke with the defendant who, after being read his Miranda rights, declined to be interviewed. See Miranda v. Arizona, 384 U.S. 436, 478-79 (1966). The detective subsequently charged the defendant with several felony offenses. At the suppression hearing, the detective described her interview with the juvenile and the information she gathered from the Dover police's missing juvenile investigation as "pivotal" to her decision to bring the AFSA, FSA, and certain uses of computer services prohibited charges.

[¶8] The Portsmouth police subsequently applied for, obtained, and executed a search warrant for the hotel room and the defendant's cell phone. On the defendant's cell phone, they found messages between the juvenile and the defendant, as well as numerous explicit photos and videos of the juvenile and the defendant, which led to the manufacture and possession of child sexual abuse images charges.

[¶9] The defendant thereafter moved to suppress the evidence taken from his cell phone, arguing that it was obtained following an unlawful arrest and seizure and that the exclusionary rule should therefore apply. The trial court held a hearing on the motion, at which the two arresting officers and the Portsmouth detective testified. During its argument, the State conceded multiple times that the defendant's arrest "clearly wasn't a lawful arrest."

[¶10] The trial court issued a written order denying the defendant's motion. Although it observed that "the illegality of the arrest is not as obvious as the State's concession implies," the court acknowledged that, due to the State's concession, it would assume without deciding that the arrest was unlawful. Consequently, it also assumed that the seizure of the defendant's cell phone, obtained during a search incident to arrest, was unlawful. Nevertheless, the trial court concluded that the defendant would have inevitably been arrested following the execution of the search warrant, which was obtained based upon an "independent source," and that the "purposes of the exclusionary rule are not undermined by admitting the evidence at issue."

3

Following a bench trial on stipulated facts, the defendant was convicted on all twenty-seven charges. This appeal followed.

## II. Analysis

[¶11] On appeal, the defendant argues that the trial court's failure to suppress the evidence obtained from his cell phone constitutes a violation of his state and federal constitutional rights to be free from unreasonable searches and seizures. See N.H. CONST. pt. I, art. 19; U.S. CONST. amend. IV. More specifically, he asserts that the police unlawfully arrested him without probable cause and that the seizure of his cell phone was therefore also unlawful. As a result of these violations of his constitutional rights, he contends, the trial court's denial of his motion to suppress the evidence subsequently obtained from his cell phone was erroneous.

[¶12] When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous, and we review its legal conclusions de novo. State v. Davis, 174 N.H. 596, 600 (2021). We first address the defendant's claims under the State Constitution and rely upon federal law only to aid our analysis. See State v. Ball, 124 N.H. 226, 231-33 (1983).

[¶13] Part I, Article 19 of the New Hampshire Constitution protects all people, their papers, their possessions and their homes from unreasonable searches and seizures. State v. O'Brien, 175 N.H. 697, 701 (2023). If an arrest is unlawful, the fruit of the poisonous tree doctrine and the exclusionary rule require the suppression of any evidence or statements derivatively obtained through a violation of Part I, Article 19 of the New Hampshire Constitution. State v. Lantagne, 165 N.H. 774, 778 (2013) ("If the evidence in question has been obtained only through exploitation of an antecedent illegality, it must be suppressed.").

[¶14] We first consider whether the defendant's arrest was lawful. The defendant argues that the police lacked probable cause to believe that he violated RSA 179:5, I, at the time of his arrest, and he asserts that the State has not established that the statutory exceptions to the warrant requirement were met. See RSA 594:10 (Supp. 2024) (enumerating circumstances in which an officer may conduct a warrantless arrest). In the trial court, it was the State's burden to establish the legality of the arrest. See Lantagne, 165 N.H. at 776-77. Not only did the State fail to argue that the arrest was lawful, but it expressly conceded before the trial court that the arrest was unlawful. Due to the State's concession on this point, the trial court "assume[d] without deciding that the initial arrest was unlawful" and proceeded to consider the parties'

4

arguments regarding whether to suppress the evidence obtained from the defendant's cell phone.[1]

[¶15] The State argues for the first time on appeal that the defendant's arrest was lawful. This argument, however, is contrary to the State's concession in the trial court. Thus, we decline to consider it. See State v. Szczerbiak, 148 N.H. 352, 355 (2002) (declining to consider argument that State raised for first time on appeal that was contrary to its assertion before trial court). For the purposes of this appeal, we will assume that the defendant's arrest was unlawful. See id.

[¶16] Based upon the foregoing, we must likewise assume that the search incident to arrest during which the police seized the defendant's cell phone was unlawful. See Lantagne, 165 N.H. at 778; see also State v. Niebling, 176 N.H. 667, 670 (2024), 2024 N.H. 34, ¶12 ("A lawful arrest justifies reasonable latitude of both the search and the seizure of things found on or in the possession of the defendant." (emphasis added)). Therefore, the question before us is whether the trial court properly admitted the evidence obtained from the defendant's cell phone despite the defendant's unlawful arrest and the seizure of his cell phone.

[¶17] In its order, the trial court considered both the independent source and inevitable discovery exceptions to the exclusionary rule. The trial court explained that, because the police obtained the search warrant for the defendant's cell phone after interviewing the juvenile and obtaining information from the Dover Police Department's missing juvenile investigation, the search warrant was independent of the defendant's arrest. It further reasoned that, following the interview with the juvenile, the defendant would have inevitably been arrested and his cell phone searched. Thus, the court concluded, "[d]ue to the search warrant providing an independent source for the search of the phone, and the inevitability of discovery of the evidence found on the phone, the purposes of the exclusionary rule are not undermined by admitting the evidence at issue here."

[¶18] The defendant argues that the "inevitable discovery doctrine does not and should not apply in this case." He asserts that because his arrest and

---

[1] In its written order, the trial court indicated that, but for the State's concession, it would have been inclined to rule that probable cause existed to support the arrest. See RSA 179:5, I (2022) (providing that no person "shall sell or give away or cause or allow or procure to be sold, delivered, or given away any liquor or beverage to a person under the age of 21"). The trial court stated that "the illegality of the arrest is not as obvious as the State's concession implies" and opined that one of the RSA 594:10, I, exceptions to the requirement for an arrest warrant "could apply." See RSA 594:10, I(c) (Supp. 2024). Specifically, it noted that the juvenile and the defendant were found in the hotel room "with beer bottles and alcohol containers scattered across the room," and that the officers may have believed that the defendant would have either attempted to conceal evidence or cause the juvenile further injury. See id.

5

the search incident thereto were unlawful, the subsequent search of his cell phone was also unlawful. As he frames the issue, "it was the seizure of [his] phone, and the police's continued illegal detention of him that allowed them access to [his] phone with a warrant." The State argues that the inevitable discovery and independent source doctrines apply because the police obtained the disputed evidence only after obtaining a search warrant that was based upon information independent of the unlawful arrest and seizure. We agree with the State and conclude that the trial court properly applied the independent source doctrine.

[¶19] Under Part I, Article 19 of the New Hampshire Constitution, a warrantless search or seizure is per se unreasonable, and evidence derived from such a search or seizure is inadmissible under the exclusionary rule. State v. De La Cruz, 158 N.H. 564, 566 (2009); State v. Robinson, 170 N.H. 52, 57 (2017) ("The general rule is that evidence must be excluded if it is discovered as a result of police misconduct."). The exclusionary rule serves three purposes: (1) to deter police misconduct; (2) to redress the injury to the privacy of the victim of the unlawful search or seizure; and (3) to safeguard compliance with State constitutional protections. De La Cruz, 158 N.H. at 566. The exclusion of evidence obtained in violation of a defendant's rights is a logical and necessary corollary to achieve those purposes. Id.

[¶20] Evidence initially discovered as a result of unlawful conduct does not, however, automatically and forever become inaccessible. Robinson, 170 N.H. at 57; see Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392 (1920). There are exceptions when the exclusion of evidence would not further the purposes of the exclusionary rule. De La Cruz, 158 N.H. at 566. One such exception, the independent source doctrine, applies when "the police have an independent source for the evidence untainted by their misconduct." Id. Regarding the inquiry as to whether an independent source exists, the United States Supreme Court has explained that:

> We need not hold that all evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

Wong Sun v. United States, 371 U.S. 471, 487-88 (1963) (quotations and citation omitted).

[¶21] The independent source doctrine is premised upon society's interest "'in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime,'" and properly balancing those

6

interests "'by putting the police in the same, not a <u>worse</u>, position that they would have been in if no police error or misconduct had occurred.'" <u>Robinson</u>, 170 N.H. at 57 (quoting <u>Nix v. Williams</u>, 467 U.S. 431, 443 (1984)). "If knowledge of facts is gained from an independent source they may be proved like any others." <u>Id</u>. (brackets and quotation omitted). "'Accordingly, information which is received through an illegal source is considered to be cleanly obtained when it arrives through an independent source.'" <u>Id</u>. (quoting <u>United States v. Soto</u>, 799 F.3d 68, 81-82 (1st Cir. 2015)). An important consideration when applying this doctrine is whether the police have benefitted from the initial illegality. <u>State v. Holler</u>, 123 N.H. 195, 200 (1983).

[¶22] The defendant posits that "[i]f the police had not illegally arrested [him] and illegally seized his phone . . . they would not have had his phone in custody to search." We conclude, however, that, "[g]ranting establishment of the primary illegality," the evidence obtained from the defendant's cell phone was obtained "by means sufficiently distinguishable to be purged of the primary taint." <u>Wong Sun</u>, 371 U.S. at 488. Here, the evidence discovered on the defendant's cell phone was obtained pursuant to a search warrant based, not upon the fact that the cell phone was being held by the police as evidence, but rather upon a source independent of the unlawful arrest and seizure.

[¶23] The search warrant application and supporting affidavit were based upon information gathered from the Dover police and the juvenile's disclosures to the Portsmouth police. The Portsmouth detective testified at the suppression hearing that, as soon as she arrived at the police station, she spoke with officers from the Dover police who had interviewed the juvenile as part of the missing juvenile investigation. The detective testified that she then interviewed the juvenile, who was forthcoming about meeting the defendant online through social media, as well as the details of her sexual interactions with the defendant. Based upon this information, which the detective described as "pivotal," she applied for a search warrant of the defendant's cell phone and decided to bring additional charges. Although the police had physical custody of the defendant's cell phone, they did not search its contents prior to receiving a lawful search warrant.

[¶24] Even if the defendant had not been arrested and his cell phone seized, the Portsmouth police nonetheless would have, based upon the juvenile's disclosures alone, applied for and obtained the search warrant for the contents of the defendant's cell phone. The search warrant application contained no information gained as a result of the defendant's arrest. Although the detective noted in the supporting affidavit that the defendant spoke with one of the Portsmouth police officers who responded to the hotel room, this conversation preceded the defendant's arrest. After being read his <u>Miranda</u> rights, the defendant declined to be interviewed at the police station.

[¶25] Thus, we conclude that the evidence discovered on the defendant's cell phone was obtained "by means sufficiently distinguishable to be purged of the primary taint" of the unlawful arrest and seizure.  Id.; cf. Holler, 123 N.H. at 201 (concluding that "the issuance of the [search] warrant . . . was based on an independent source untainted by the illegal interrogation and search" when officer seeking warrant "left the police station prior to the illegal interrogation and warrantless search" and "[t]he affidavit accompanying the warrant application contained specific facts obtained prior to the commission of any illegality").  The State Constitution provides at least as much protection as the Federal Constitution under these circumstances.  See Nix, 467 U.S. at 443 ("The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation.").  Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.  See State v. Bell, 164 N.H. 452, 456 (2012).

Affirmed.

MACDONALD, C.J., and COUNTWAY, J., concurred.